United States Court of Appeals,

Eleventh Circuit

No. 96-6215.

Barbara Johnson BUCKLEY, Plaintiff-Appellant,

v.

METROPOLITAN LIFE;  Hoffman-La Roche, Inc.;  Roche Biomedical Laboratories, Inc.; Shyrese Langston, Defendants-Appellees.

June 24, 1997.

Appeal from the United States District Court for the Southern District of Alabama. (No. 94-0947-CV-S), Charles R. Butler, Jr., Judge.

Before EDMONDSON, Circuit Judge, and KRAVITCH and HENDERSON, Senior Circuit Judges.

PER CURIAM:

Barbara Johnson Buckley initially brought this action in the Circuit Court of Mobile County, Alabama against Metropolitan Life Insurance Company, Hoffmann-La Roche Inc., Roche Biomedical Laboratories, Inc. and Shyrese Langston alleging in three counts violations of Alabama law for wrongfully terminating her long term disability benefits arising out of her employment with Roche Biomedical Laboratories, Inc., then a subsidiary of Hoffmann-La Roche, Inc.  The defendants removed the action to the United States District Court for the Southern District of Alabama, claiming that Buckley's causes of action were preempted by the Employee Retirement Income Security Act ("ERISA"), and the defendants, Hoffmann-La Roche Inc. and Roche Biomedical Laboratories, Inc., also asserted a counterclaim for an overpayment of benefits.  Buckley filed an amended complaint which added Counts Four and Five seeking relief under ERISA.  The district court eventually granted the defendants' motion for summary judgment and Buckley filed this appeal from the final judgment.  For the reasons set forth below, we affirm the judgment of the district court.

I. FACTS

In 1986, Buckley was hired as a service representative by Roche Biomedical Laboratories, Inc.  Beginning in late 1987, Buckley was forced to miss substantial time from work due to chronic

sarcoidosis, a pulmonary disease. Her disease worsened to the point that she was unable to carry out her assigned duties. On November 1, 1988, the Hoffmann-La Roche Welfare Benefits Committee ("Committee") approved Buckley's claim for disability benefits under the Hoffmann-La Roche Long Term Disability ("LTD") Plan, which provides partial replacement of earnings for employees who become totally disabled and which is administered for Hoffmann-La Roche, Inc. by the defendant, Metropolitan Life Insurance Co. ("Metlife").

Section 4.4(b) of the Plan provided that a recipient of disability income might "be required not more often than semi-annually to undergo a medical examination by a physician or physicians appointed by the Committee and/or submit evidence of continued Total Disability satisfactory to the Committee." The Plan further stipulated that "if the Member refuses to submit to a medical examination or to submit evidence of Total Disability as required by the Committee, his disability income under the Plan shall cease as of the date of such determination or refusal."

Buckley complied with all the defendants' requests under this provision until the summer of 1992. In February of that year, Dr. William C. Gewin examined Buckley and executed a Certified Consultant's Evaluation Summary Form. Responding to a followup request from Metlife, Dr. Gewin wrote a letter to defendants on May 13, 1992 stating his opinion that Buckley was permanently and totally disabled. On June 23 and July 21, 1992, Metlife issued computer-generated letters to Buckley requesting that she submit a current statement of her functional capacity from her attending physician.[1] On August 24 of that year, Metlife claims reviewer Anderson advised Buckley that her benefits would be terminated effective September 1, 1992 if she did not return a Functional Capacity form executed by her physician within 30 days. Buckley claims that Dr. Marc S. Gottlieb executed the required form on September 21, 1992 and that she immediately forwarded it to the defendants.

[1]The defendants were unable to produce copies of these letters, and Buckley's affidavits are inconsistent as to whether she received them. In an affidavit dated October 24, 1995, Buckley stated that, upon receiving an August 24, 1992 letter from Kay Anderson requesting the overdue form, she called Shyrese Langston to inquire if the Functional Capacity form she had previously executed and remitted had been received. Since Buckley could not have completed and returned the form unless she had received at least one of these letters, this statement suggests that she had received one or both of them. In a second affidavit dated November 29, 1995, however, Buckley states that she had not received any forms during the summer of 1992 prior to the August 24, 1992 letter from Anderson.

Buckley also contends that she spoke with Shyrese Langston, a Roche representative, in late September about the form. She maintains Langston promised to contact her if the form was not received. Langston denies that any such conversation ever took place. In any event, the defendants did not receive the form until late January 1993.

In the interim, on December 8, 1992, the Committee met and determined that Buckley's LTD benefits were due to be terminated for her failure to submit evidence of continuing total disability. On January 7, 1993, Roche notified Buckley that her benefits had been discontinued effective August 31, 1992 for her violation of § 4.4(b) of the Plan. Buckley requested an appeal of that decision pursuant to § 8.7(b) of the Plan, which permits a rehearing of a beneficiary's claim by the Committee. The Committee affirmed its decision to terminate the benefits on March 10, 1993.

Several years earlier, on June 5, 1990, the Social Security ("SS") Administration found that Buckley was entitled to monthly disability benefits, retroactive to February 1988. Shortly thereafter, Buckley received a lump-sum payment from SS of $10,890.70, which did not include $3,496.30 withheld to cover her attorney's fees. Under § 5.3 of the Plan, a member who receives retroactive SS benefits must repay the Plan. Anderson wrote Buckley seeking reimbursement of the overpayment in the amount of $14,158.98. Buckley agreed to reimburse the Plan in monthly installments and, between August 1990 and October 1991, made payments totalling $335.00, leaving a balance due of $13,823.98.

As stated earlier, Buckley filed this action in Alabama state court against Metlife, the Roche defendants and Langston. The defendants removed the case to federal court and filed a counterclaim for the unpaid balance of the overpayment resulting from the lump-sum payment from SS. Buckley eventually stipulated to the entry of summary judgment in favor of Metlife and Langston on all claims and in favor of the Roche defendants on all but Count IV of the amended complaint, which charged the Roche defendants with wrongful termination of the LTD benefits. The district court granted the defendants' motion for summary judgment on that count and on their counterclaim seeking reimbursement of the overpayment. In the same order, the district court denied the plaintiff's cross motion for summary judgment. Buckley appeals from that final judgment.

The district court's grant of summary judgment is subject to plenary review. We therefore apply the same legal standards that bound the district court. *See Brown v. Blue Cross & Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1559 (11th Cir.1990).

## II. DISCUSSION

*A. Standard of Review for Fiduciary's Decisions.*

The district court applied the arbitrary and capricious standard to reviewing both the defendants' plan interpretations and their factual findings in affirming their decisions to terminate Buckley's benefits and to reject her appeal of that determination. The court concluded that there was no conflict of interest which would warrant the application of the heightened arbitrary and capricious standard to this case.

On appeal, Buckley urges that the district court erred by failing to follow the heightened arbitrary and capricious standard of review applicable when there exists a conflict of interest. According to Buckley, there is a conflict of interest here because Hoffmann-La Roche ("HLR") funds the LTD Plan and, thus, has a financial stake in minimizing benefits paid under the Plan, and because the HLR Board of Directors appoints and controls the Committee which administers the LTD Plan. She also contends that a conflict exists because the Committee which makes the initial determination concerning payment of benefits also hears the appeal from that assessment.

In response, HLR asserts that the district court correctly applied the arbitrary and capricious standard because the Plan administrator is granted discretion in making benefits' determinations and because no conflict of interest exists in this case. HLR points out that its fixed, nonreversionary contributions to the Plan are held by a separate trustee and that benefits are paid from assets of the trust rather than the assets of HLR. Further, it maintains that the fact that HLR controls the Committee which makes benefit decisions is immaterial because, under ERISA, a corporation's officers may also serve as fiduciaries of its benefits plan. Finally, it alleges that the Committee may also hear the appeal so long as the applicant has a full and fair opportunity for review of the initial decision.

ERISA does not provide a standard to review decisions of a plan administrator or fiduciary.

The Supreme Court has held that a range of standards may apply to benefits determinations under the statute. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989). Accordingly, this court has adopted the following standards for reviewing administrators' plan interpretations: (1) *de novo* where the plan does not grant the administrator discretion, (2) arbitrary and capricious when the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interest. *Marecek v. BellSouth Telecommunications, Inc.,* 49 F.3d 702, 705 (11th Cir.1995).

In this case, the parties agree that the Plan vests the Committee with discretion in making benefits determinations. The Third Circuit has also reached that conclusion with respect to HLR's LTD Plan. *See Abnathya v. Hoffmann-La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir.1993). Therefore, unless there is a conflict of interest, the arbitrary and capricious standard should be applied at least to the Committee's interpretations of the Plan provisions. Buckley argues that this court's holding in *Brown v. Blue Cross & Blue Shield of Alabama, Inc.,* 898 F.2d 1556, supports her claim that a conflict of interest exists in this case. In *Brown,* a panel of this court held that the heightened arbitrary and capricious standard must be used when the plan was administered by an insurance company which paid benefits out of its own assets. "Because an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business." *Id.* at 1561. As the district court found, however, that is not the case here. Under the Plan, benefits are paid from a trust funded through periodic, nonreversionary contributions by HLR. As the Third Circuit noted with respect to this Plan, "Hoffmann ... incurs no direct expense as a result of the allowance of benefits, nor does it benefit directly from the denial or discontinuation of benefits." *Abnathya,* 2 F.3d at 45 n. 5. Thus, the district court correctly accepted the arbitrary and capricious standard as its guide in judging the defendants' plan interpretations.

Buckley also challenges the district court's application of the arbitrary and capricious criterion to the administrator's factual determinations. In her view, such decisions should be reviewed under a *de novo* standard. In *Marecek,* this court declined to decide what standard of

review should be followed in evaluating an administrator's factual findings. *See* 49 F.3d at 707. Some courts have concluded that *Firestone* deals only with plan interpretations and have applied the deferential arbitrary and capricious standard to all factual findings. *See, e.g., Pierre v. Connecticut General Life Insurance Co.,* 932 F.2d 1552 (5th Cir.), *cert. denied,* 502 U.S. 973, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991). Other courts have held that *Firestone* controls and, therefore, that the *de novo* and arbitrary and capricious standards are to be used, depending on whether the administrator is granted discretion in making benefits determinations. *See, e.g., Luby v. Teamsters Health, Welfare and Pension Trust Funds,* 944 F.2d 1176 (3d Cir.1991). Given that the LTD Plan at issue here vests the administrator with discretion, the district court properly employed the arbitrary and capricious guidelines in judging the administrator's factual conclusions.

*B. Benefits Determinations.*

Buckley argues that the district court erred in holding that the Committee's initial termination of her LTD benefits was reasonable. As in the district court, she disputes the Committee's interpretation of the Plan provisions in two respects. First, she claims that her failure to timely submit evidence of continuing disability did not constitute a "refusal" to provide the required information under § 4.4(b) of the Plan. She would engraft a *mens rea* component onto the Plan's requirement that the applicant submit continuing evidence of disability. In her view, since she did not *intend* to refuse to provide the necessary information, the Committee was not justified in terminating her benefits.

In evaluating such a challenge, the court must first resolve whether the applicant has proposed a sound reading of the plan to rival that of the administrator. *Lee v. Blue Cross/Blue Shield of Alabama,* 10 F.3d 1547, 1550 (11th Cir.1994). If so, the court must then decide whether the administrator was arbitrary and capricious in adopting a different version. *Id.* In this case, Buckley's understanding of the term "refusal" in § 4.4(b), which would require the Committee to inquire into the subjective motivation of any applicant who failed to submit the necessary documentation, is not sound or workable. As the district court observed, it would lead to logistical and practical problems which would render the provision unenforceable. Moreover, the Committee's

interpretation, that the required documentation must actually be received by the administrator in time for the semi-annual reconsideration of the applicant's continuing disability, is clearly rational and helps ensure the smooth functioning of the Plan. Therefore, Buckley's protest to the Committee's interpretation of this provision must fail.

Second, Buckley asserts that the Committee also misconstrued § 4.4(b)'s provision that the beneficiary "may be required not more often than semi-annually to ... submit evidence of continued Total Disability." She apparently contends that this provision is satisfied so long as the beneficiary submits *any* evidence of disability within six months of the termination of benefits, even if it is not current. Thus, she reasons that Dr. Gewin's May 13, 1992 letter, in response to a Committee inquiry about his February 1992 examination of Buckley, discharged her obligation through August of that year and meant that she was not required to submit any additional documentation in the summer of 1992. Yet, if this suggestion were accepted, beneficiaries could comply with § 4.4(b) by submitting non-current information every six months. This notion is not sound because it would deprive the Committee of the information necessary for it to make the periodic determinations of continuing disability required by the Plan. The district court did not err in rejecting this argument.

Finally, as a factual matter, Buckley urges that the Committee incorrectly terminated her benefits. She maintains that, in response to the August 24, 1992 letter from Metlife claims reviewer Anderson, she had Dr. Gottlieb execute the required form and she forwarded it to the defendants. She also claims to have spoken with Shyrese Langston about the overdue form, although Langston contends that this conversation never took place. It is undisputed that the defendants did not receive the form until January, 1993.

In reviewing a termination of benefits under the arbitrary and capricious standard, the function of a reviewing court is to discern whether there was a reasonable basis for the decision, relying on the facts known to the administrator at the time the decision was made. *See Jett v. Blue Cross and Blue Shield of Alabama, Inc.,* 890 F.2d 1137, 1139 (11th Cir.1989). It is important to understand that Buckley's benefits were not terminated because the Committee found that she was no longer disabled, but because she had failed to submit the required proof of her continuing

disability. At the time the Committee voted to terminate Buckley's benefits on December 8, 1992, it had not received the required form attesting to Buckley's continuing disability or any other written communication regarding the matter from Buckley since the previous May. Based on those facts, the Committee's decision was clearly not arbitrary and capricious. Therefore, the district court correctly rejected Buckley's arguments on these points.[2]

## C. Defendants' Affidavits.

Finally, Buckley complains that the district court impliedly denied her motion to strike certain portions of the affidavits of Kay Anderson and Shyrese Langston. With respect to Anderson's affidavit, Buckley states that ¶ 10, which refers to the computer-generated June and July 1992 letters requesting submission of evidence of continuing disability, should have been stricken because Anderson lacked personal knowledge that the letters were actually issued to or received by her. This argument is without merit. The district court noted Buckley's position on these letters and observed that the defendants had been unable to produce copies of them. Further, the court's disposition of this case did not rest on the contested statement regarding the computer-generated letters. It is undisputed that Buckley received the August 24, 1992 letter from Anderson warning that her benefits would be terminated effective September 1, 1992 if the required form was not received and that, notwithstanding this clear warning, the form was not received by the defendants until late January 1993, after she had been notified on January 7, 1993 that her benefits had been terminated.

Buckley's attack on Langston's affidavit centers on WW 2, 3, 4, 5 and 8 which she contends should have been stricken, either because they also refer to the computer-generated letters or because they relate to the content of the "vote package," the written materials provided to members of the Committee when they considered Buckley's claim. The first objection was dealt with above.

---

[2]The district court and the defendants in their brief point out that Buckley made inconsistent statements—regarding her receipt of the computer-generated letters sent to her in June and July 1992 and her submission of a completed form prior to the August 24, 1992 letter from Anderson—in affidavits submitted to the district court in support of her motion for summary judgment. Since those affidavits were not before the Committee while it was considering her claim, they would appear to be irrelevant in evaluating its decisions.

The second has no relevance because the district court did not refer to, much less rely on, the content of the "vote package" in reaching its decision.

For the forgoing reasons, the judgment of the district court is AFFIRMED.