**Norvella JORDAN, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**No. 8:00–CV–2076–T–17TGW.**

United States District Court,
M.D. Florida,
Tampa Division.

May 21, 2002.

William Francis Rutger, Rutger & Donaldson, Palm Harbor, FL, for plaintiff.

Jeannine Cline Jacobson, Proskauer Rose LLP, Boca Raton, FL, Gregory D. Swartwood, The Nation Law Firm, Longwood, FL, for defendant.

## ORDER

KOVACHEVICH, Chief Judge.

THIS CAUSE is before the Court on Plaintiff's Motion for Summary Judgment and Memorandum of Law in support thereof (Dkt. No. 10); Metropolitan Life Insurance Company's Response to Plaintiff's Motion for Summary Judgment and Cross–Motion for Summary Judgment (Dkt. No. 16); Affidavit of Laura Sullivan in Support of Metropolitan Life Insurance Company's Response to Plaintiffs's Motion for Summary Judgment and Cross–Motion for Summary Judgment (Dkt. No 17); and Plaintiff's Response to Defendant's Cross Motion for Summary Judgment (Dkt. No. 20).

### Background

Plaintiff Norvella Jordan (Plaintiff) began employment with NationsBank Corporation (NationsBank) in 1989 as a mortgage closer. As an employee of NationsBank, Plaintiff was a covered participant in the NationsBank Long Term Disability Insurance Plan (the plan or the policy). Metropolitan Life Insurance Company (Defendant) acts as the claims administrator and the insurer under the terms of the plan, and NationsBank is the plan administrator. Additionally, the plan is governed by the Employee Retirement Income Security Act of 1974 (ERISA), Title 29, United States Code, Sections 1001, *et seq.*

On November 20, 1998, Plaintiff stopped working and, subsequently, applied for disability benefits. On April 2, 1999, and again on May 10, 1999, Defendant contacted Plaintiff and requested that she complete certain forms to enable Defendant to process her claims for long-term disability benefits. Also, on April 2, 1999, and a month thereafter, Defendant contacted NationsBank and requested that it provide Defendant with a job description of Plaintiff's occupation.

Then, on May 21, 1999, Defendant received a number of documents from Plaintiff, including a list of physicians who had treated Plaintiff; a list of her medications; a copy of the Notice of Award from the Social Security Administration; a form completed by Dr. Keith A. Brady, one of Plaintiff's treating physicians, and her medical records from his office; medical records from Dr. Palmer Branch, Plaintiff's treating podiatrist; medical records from Paul H. Bridgeford, plaintiff's treating rheumatologist; emergency room records from Bayfront Medical Center; and physical therapy records from Plaintiff's treating physical therapist. On June 11, 1999, Robert Porter, M.D. conducted an independent medical review of Plaintiff's claim, and, on June 21, 1999, Defendant advised Plaintiff that it was denying her claim for long-term disability benefits because she was not disabled under the terms of the plan.

Plaintiff notified Defendant, on August 19, 1999, that she was going to file an administrative appeal. She also indicated that she was seeing a rheumatologist on October 1, 1999. Defendant contacted Plaintiff and explained that, although her appeal was not timely, it would give Plaintiff an additional forty-five days to submit additional medical documentation and it would review the additional documentation. Specifically, Defendant extended Plaintiff's time to appeal until October 11, 1999. Plaintiff contacted Defendant throughout October, past the October 11th deadline, to notify Defendant that she was submitting additional medical records. However, Defendant never received any additional medical information, and it denied her appeal on December 22, 1999. On January 11, 2000, Defendant received additional medical information from Plaintiff and notified her that it would have a nurse coordinator review the information. However, on February 1, 2000, after the

review, Defendant upheld the denial of Plaintiff's benefits.

Plaintiff then filed a two-count complaint in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, requesting that Defendant pay her long-term disability benefits. Her Complaint was removed to this Court on October 10, 2000. Both parties now move for summary judgment.

## Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden can be discharged if the moving party can show the Court that there is "an absence of evidence to support the non-moving party's case." *Id.* at 323, 325, 106 S.Ct. 2548. When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. 2548.

Issues of fact are " 'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those that will affect the outcome of the trial under governing law. *Id.* at 248, 106 S.Ct. 2505. In determining whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983).

All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First Natl. Bank of Mt. Pleasant*, 595 F.2d 994, 996–997 (5th Cir.1979).

The court may not weigh the credibility of the parties on summary judgment. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir.1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact. *Id.*

## Discussion

### A. Standard of Review for ERISA claims

As an initial matter, the Court must determine the applicable standard of review to use in assessing the denial of Plaintiff's claims because ERISA does not provide the standard to review decisions of a plan administrator or a fiduciary. *Marecek v. BellSouth Telecommunications*, 49 F.3d 702, 705 (11th Cir.1995) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). In *Firestone Tire & Rubber Company v. Bruch*, the Supreme Court of the United States established the standard of review to be used in ERISA cases to benefit determinations made by claims fiduciaries who have discretionary authority under a plan. 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Court held that "a denial of benefits challenged under Section 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. 948.

Following this, the Eleventh Circuit, in *Buckley v. Metropolitan Life*, set forth three standards of review that a court may apply in reviewing a plan administrator's

claims decisions: "(1) *de novo* where the plan does not grant the administrator discretion; (2) arbitrary and capricious [where] the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interests." 115 F.3d 936, 939 (11th Cir. 1997).

There is no dispute that Defendant is the claims administrator and the insurer of Plaintiff's policy. Additionally, the plan documents clearly state that NationsBank, and not Defendant, is the plan administrator; however, this fact is not determinative of whether this Court should review Defendant's denial of Plaintiff's claims *de novo*. Rather the Court must look at whether either the plan administrator *or* the plan fiduciary was given express discretionary authority in the plan documents. *See Marecek*, 49 F.3d 702, 705 n. 1 (11th Cir.1995) ("The distinction between a plan administrator and a plan fiduciary is unimportant because the standard of review, as set forth by the Court in *Firestone*, 'applies equally to the decision of fiduciaries and the plan administrator.'").

■ The Court must follow a series of steps to make a specific determination as to which standard of review it should apply. First, it must look at the plan documents to determine whether the claims administrator is given discretion. *HCA Health Servs. of Ga. v. Employers Health Ins. Co.*, 240 F.3d 982, 995 (11th Cir.2001). If the Court finds that the documents grant discretion to the claims administrator, it applies either the arbitrary and capricious standard or the heightened arbitrary and capricious standard. *Id.* Next the Court "evaluates the claims administrator's interpretation of the plan to determine whether it is wrong," regardless of whether arbitrary and capricious review or the heightened arbitrary and capricious review applies. *See id.* at 993 n. 23 ("'Wrong' is the label used by our prece-

dent to describe the conclusion a court reaches when, after reviewing the plan documents and disputed terms *de novo*, the court disagrees with the claim administrators's plan interpretation."). If it determines that the determination is "wrong," the Court must then decide whether "the claimant has proposed a 'reasonable' interpretation of the plan." *Id.* (quoting *Lee v. Blue Cross/Blue Shield*, 10 F.3d 1547, 1550 (11th Cir.1994)).

■ In the present case, the Court must first determine whether the plan documents vest discretionary authority in Defendant. Page twelve of the plan documents expressly states that discretionary authority is vested in the plan administrator and the other plan fiduciaries. As claims administrator, Defendant is a fiduciary of the plan and, therefore, is given discretionary authority within the plan documents. Because this Court has found that the plan documents provide discretionary authority in Defendant, the correct standard of review is either arbitrary and capricious or heightened arbitrary and capricious, depending on whether a conflict of interest exists.

**B. Determination of Plaintiff's Claims**

■ The Court must next determine whether Defendant's denial of Plaintiff's claim for benefits was "wrong." The Eleventh Circuit has held that, when applying the arbitrary and capricious standard to an ERISA benefits denial case, the court must determine if there was a reasonable basis for the denial, "based upon the facts known to the administrator at the time the decision was made." *Payne v. Ryder System, Inc. Long Term Disability Plan*, 173 F.R.D. 537, 542 (M.D.Fla.1997) (quoting *Jett v. Blue Cross and Blue Shield of Alabama*, 890 F.2d 1137, 1140 (11th Cir. 1989)). "As long as a reasonable basis

appears for its decision, it must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary decision." *Id.* (quoting *Jett,* 890 F.2d at 1140).

■ Defendant's determination to deny Plaintiff's claims is supported by a rational basis, based on the facts that Defendant possessed at the time of its decision. Under the plan,

"Disability" or "Disabled" means that, due to an Injury or Sickness, you require the regular care and attendance of a Doctor unless, in the opinion of a Doctor, future or continued treatment would be of no benefit and:

1. you are unable to perform each of the material duties of your own occupation; and

2. after the first 24 months of benefit payments, you must also be unable to perform each of the material duties of any gainful work or service for which you are reasonably qualified, taking into consideration your training, education, experience, and past earnings; or

3. you, while unable to perform all of the material duties of your own occupation on a full-time basis, are:

a. performing at least one of the material duties of your own occupation or any other gainful work or service on a part-time or full-time basis; and

b. earning currently at least 20% less per month than your Indexed Basic Monthly Earnings Due to that same Injury or Sickness.

Additionally, the plan describes "own occupation" as:

the activity that you regularly perform and that serves as your source of income. It is not limited to the specific position you held with your Employer. It may be a similar activity that could be performed with your Employer or any other employer.

After review of the numerous reports from the many different doctors that Plaintiff visited, as well as having an independent doctor review her claims, Defendant determined that Plaintiff was not disabled under the terms of the plan and that she was not entitled to long-term disability benefits. Plaintiff saw a variety of doctors, all of whom determined that she was not disabled beyond the one hundred eighty day elimination period required under the plan. Specifically, the plan requires that a claimant must be disabled for one hundred eighty days to qualify for benefits. Because Plaintiff's last day worked was November 20, 1998, pursuant to the plan, she would have to show that she was disabled, as defined under the plan, from November 20, 1998 until May 20, 1999.

Defendant does not dispute that Plaintiff suffers from fibromyalgia; however, it claims that under the plan's definition, she does not qualify as disabled; therefore, she does not qualify for long-term disability benefits. Specifically, Defendant argues that Plaintiff can still perform her occupation as defined under the plan. Plaintiff and Defendant both agree that Plaintiff's occupation consists of sedentary work. None of her doctors' records reported that she was unable to work or unable to perform her current occupation. In fact, one of her doctors indicated that she could sit for eight hours. Additionally, as the June 21, 1999 letter from Tracey Gambino, a case management specialist for Defendant, points out, even in light of the minimal restrictions that two of the doctors put on Plaintiff's ability to work, Plaintiff's current occupation is unaffected by her condition or the restrictions that the doctors have approved. Additionally, Defendant did not rely only on the medical records that her treating physicians submitted, Defendant also had an independent doctor review her files and gave Plaintiff

additional time to appeal her claim and submit additional medical evidence.

Because Defendant is given broad discretion in interpreting the terms of the policy, it was reasonable that it determined, with the knowledge that it possessed at the time that it denied Plaintiff's claims, and at the time it reviewed her appeal, that Plaintiff's "injury or sickness" did not prevent her from performing her job; therefore, she was not disabled under the terms of the plan, and she is not eligible for long-term disability benefits. Finally, because the Court determines that Defendant's interpretation was not wrong, it need not inquire into whether Plaintiff proposed a reasonable interpretation of the plan. *See HCA Health Servs.*, 240 F.3d at 993 ("At each step, the court must make a determination that results in either the progression to the next step or the end of the inquiry.").

■ A heightened standard of review is appropriate in certain cases where an insurer is also the claims fiduciary entrusted with determining the eligibility benefits under an ERISA plan. *Payne*, 173 F.R.D. at 542 (citing *Brown*, 898 F.2d at 1556). Even under this heightened standard of review, summary judgment is appropriate where there is no evidence of bias and no evidence of abuse of discretion. *Id.* (citing *Taft v. The Equitable Life Assurance Soc.*, 9 F.3d 1469 (9th Cir.1993)).

■ Plaintiff has offered no evidence that Defendant has acted in bad faith or had improper motives. In fact, the evidence presented shows that Defendant did not act in bad faith at all. It continually contacted her about the information that it needed to review her claim; however, it was Plaintiff that refused to submit the necessary information in a timely fashion. Moreover, although the time for appealing her claim had expired, when Plaintiff notified Defendant that she wished to appeal her denial of benefits, Defendant allowed her to and even gave her an extra forty-five days to submit additional evidence. Finally, even though Plaintiff failed to take advantage of her opportunity to appeal, by failing to submit additional medical evidence, Defendant allowed her another review of her claim. Because Defendant's decision was not an abuse of discretion, nor did it have improper motives, the Court finds that its decision was proper and summary judgment in Defendant's favor is appropriate. Therefore, Defendant's Motion for Summary Judgment must be granted and Plaintiff's Motion must be denied.

Accordingly, it is

**ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. No. 10) be **DENIED** and Defendant's Cross–Motion for Summary Judgment (Dkt. No. 16) be **GRANTED**. The Clerk of Court shall enter a final judgment for Defendant.