**Bobi ONOFRIETI, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**No. 3:02–CV–868–J–20HTS.**

United States District Court, M.D. Florida, Jacksonville Division.

March 22, 2004.

Paul M. Sullivan, Jr., Paul M. Sullivan, Jr., P.A., West Palm Beach, FL, for Plaintiff and Counter–Defendant.

Ralph C. Losey, Alan Harrison Brents, Akerman Senterfitt, Orlando, FL, for Defendant and Counter–Claimant.

### ORDER

SCHLESINGER, District Judge.

Before the Court is Defendant's Motion for Summary Judgment (Doc. No. 38, filed

January 21, 2004), Plaintiff's Response[1] (Doc. No. 32, filed December 15, 2003), Plaintiff's Motion to Dismiss Counterclaim (Doc. No. 42, filed January 28, 2004), Defendant's Motion to Strike Plaintiff's Demand for a Jury Trial (Doc. No. 47, filed February 24, 2004), Defendant's Response in Opposition the Plaintiff's Motion to Dismiss Counterclaim (Doc. No. 48, filed February 24, 2004), and Plaintiff's Memorandum in Response to Defendant's Motion to Strike (Doc. No. 49, filed March 11, 2004). Plaintiff is seeking reinstatement of her long term disability (LTD) benefits under an insurance plan governed by the Employer Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. In its counterclaim, Defendant is seeking funds paid out to Plaintiff upon a promise to reimburse any funds, such as social security payments, that should be offset from Plaintiff's benefit payments.

## I *Factual Background*

### A. Administrator's Decision to Terminate Benefits

Plaintiff was injured when a light fixture fell and hit her head while at work in 1988. Plaintiff was then diagnosed with fibromyalgia, and Defendant began payment of LTD benefits under the Plan starting in June of 1989 through December of 2001. It is unclear why Defendant decided to reassess Plaintiff's status, but in the summer of 2001, Defendant reviewed the administrative record regarding Plaintiff and then conducted surveillance. Plaintiff was observed and videotaped on several dates in July and October of 2001. Based on the surveillance and a review of the administrative record, Defendant concluded that Plaintiff was not disabled and stopped paying LTD benefits in December of 2001.

The administrative record reveals a patient whose doctors are perhaps puzzled by her illness but conclude that she is unable to work. With the exception of an unsubstantiated diagnosis of swelling in Plaintiff's neck, her doctors base their conclusions on her reports of pain. For the initial application, Dr. Parsons concluded that Plaintiff was unable to work and was suffering from damage to muscles and ligaments in her neck. In 1989, Dr. Scott reported that Dr. Greer had written that his impression was fibromyalgia and that he had found no evidence of neurological impairment attributable to the head trauma. Dr. Scott recommended that Plaintiff return to work. In 1996, Dr. Fruchan remarked that Plaintiff's condition was in "somewhat of a remission phase," but then stated that Plaintiff was unable to work in the future. In 1996, Dr. Caldwell performed an independent medical exam (IME) and concluded that although he could find no reason why Plaintiff could not work and he had difficulty understanding how a light fixture could precipitate these injuries, he also stated that Plaintiff may indeed have fibromyalgia. In 1997, Dr. Richter reviewed Plaintiff's medical records and concluded that he did not have enough information to comment on Plaintiff's ability to work. In 1998, Dr. Kohen filed an IME report in which he found that Plaintiff's level of pain "seemed more severe than would be ordinarily associated with the physical findings present." Dr. Kohen went on to state, however, that Plaintiff's level of pain would prevent her from working and that "she does not appear capable of working." In June of 2001, Dr. Alfonso opined that Plaintiff should completely avoid pushing, pulling, bending, and stooping, and then four months later, Dr. Alfonso also stated that

---

1. Plaintiff's Response was filed in response to Defendant's original Motion for Summary Judgment that was stricken. The Court then granted Defendant's Motion to Exceed Page Limit, and Plaintiff did not amend her original response.

she could not push or pull and only occasionally bend, but not lift or carry more than twenty pounds. After Defendant discontinued LTD benefits and during the appeal, Plaintiff submitted the report of Dr. Greer who concluded that Plaintiff satisfied the clinical criteria for fibromyalgia and that he did not believe that she was capable of working in any capacity. Dr. Greer also stated that work of any type would aggravate Plaintiff's pain and stress and prevent her from functioning at home. The record also contains many reports by Plaintiff's chiropractors who all reach the conclusion that Plaintiff is unable to work.

In August of 2001, Plaintiff sent Defendant an activity form requesting information regarding her daily activities. The completed form and the surveillance reveal discrepancies between the self-reporting limitations and her actual activities. For example, Plaintiff reported that she normally did not get out of bed before noon, but the surveillance showed that Plaintiff was out of the house by 8:30 AM on two of the four days and out and about before 11:00 AM on the other two days. Plaintiff also reported that she could not shop because of the pain, but she was observed shopping on two of the days for up to two hours. Also, Plaintiff asserted that she cannot "bend or pull or push, sit, stand, stoop, etc." because of the pain; yet the surveillance revealed Plaintiff bending to place a child in a car and stroller, bending to retrieve objects and a child from a car, carrying a child on her hip, kicking and picking up soccer balls, standing near a pool for half an hour, and stooping to retrieve towels and then carrying those towels across the pool area. Plaintiff further claimed that she was unable to sit in a car for more than twenty minutes, but was observed in a car for up to thirty-four minutes.

The surveillance tapes and Plaintiff's medical records were sent to Dr. Lieberman who reviewed the records and the tapes but did not independently exam Plaintiff in reaching his conclusion. Dr. Lieberman concluded that it would be difficult to substantiate on an objective basis that Plaintiff is unable to work. He further commented that the surveillance tape indicated a higher level of activity that would be required in a sedentary work environment.

### B.  Reimbursement of funds

The plan provides beneficiaries with several options when they have long term disability payments, because the Social Security Administration often requires substantial time in determining social security benefits, which are an offset of the disability benefits. In this case, Plaintiff chose to receive full disability benefits before a determination by the Social Security Administration determined her eligibility. As a condition of the receipt of full benefit payments, Plaintiff agreed to reimburse Defendant her social security benefits or allow for future offsets. Plaintiff received social security benefits but did not notify or reimburse Defendant.

## II  *ERISA Claim*

### A.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). When a moving party has discharged its burden, the nonmoving

party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the nonmovant, *Key West Harbour v. City of Key West*, 987 F.2d 723, 726 (11th Cir.1993), and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256, 257 (11th Cir.1989).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). It must be emphasized that the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported summary judgement motion. Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

### B. Standard of Review for ERISA Decisions

As an initial matter, the parties disagree over the standard by which the Defendant's denial of benefits to Plaintiff should be reviewed. Defendant argues that because it maintained discretionary authority, the denial of Plaintiff's benefits should be judged under an arbitrary and capricious standard. *See, e.g., Jett v. Blue Cross & Blue Shield*, 890 F.2d 1137, 1138–39 (11th Cir.1989); *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 38–39 (11th Cir.1989). The Plaintiff agrees that Defendant has discretionary authority under the plan. Plaintiff argues, however, that the more appropriate standard of review is the "heightened arbitrary and capricious standard," whereby the Court is required to give less deference to the Defendant's decision because of Defendant's conflict of interest. *See, e.g., Buckley v. Metropolitan Life*, 115 F.3d 936 (11th Cir.1997); *Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556 (11th Cir.1990). It appears that Defendant both funds and administers the Plan, and thus Defendant has a conflict of interest. Accordingly, the Court will apply the heightened arbitrary and capricious standard.

The heightened arbitrary and capricious standard involves several steps. First, a court is to determine, under de novo review, whether the claims administrator's interpretation is "wrong." *See HCA Health Services v. Employer Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir.2001). Next a court is to determine if the claimant's interpretation is reasonable. *Id.* at 994. Then a court is to determine if the claim administrator's interpretation is reasonable, even though the court has already determined that it is "wrong." *Id.* A wrong, but reasonable, claim administrator's interpretation is entitled to deference,

unless the administrator cannot meet its burden of demonstrating that a conflict of interest did not taint the decision. *Id.* at 994–95.

### C. Analysis

██ ▪ Relying on *Levinson v. Reliance Standard Life Ins. Co.,* 245 F.3d 1321 (11th Cir.2001), Plaintiff argues that Defendant bears the burden of demonstrating that Plaintiff is not disabled under the terms of the plan, because Plaintiff received benefits for several years. The *Levinson* court shifted the burden to the defendant to show that the plaintiff was not longer disabled, but the court did so not because the defendant had been paying benefits previously, but because the plaintiff had presented evidence that he met the definition of disabled under the plan. Thus, the Court concludes that past payment of benefits does not shift the burden of proof. *See Grant v. Provident Life and Accident Ins. Co.,* 2001 WL 1671028 (S.D.Fla. June 27, 2001) (reaching the same interpretation of Levison).

██ The first step in the heightened arbitrary and capricious is, on de novo review, to determine if Defendant's decision to terminate benefits was "wrong." Having reviewed the administrative record, including the surveillance tapes, the Court concludes that the administrator's decision to discontinue benefits was not wrong. The administrative record is replete with doctors' conclusions that Plaintiff is unable to work, and the Court does not question the doctors' prognosis based on the evidence presented to them. The Court, however, concludes that the information Plaintiff provided to her doctors is unreliable.

Plaintiff's self-reported capacities drastically differ from her actual capacities.

The self-reported physical capacities evaluation describes an individual who is unable to get out of bed until noon; who then is unable to sit or stand; who cannot take care of herself, requiring the assistance of others to open her medicine and cook her meals; who stays in bed most of the day; and who cannot do any type of housework. Yet the surveillance reveals a drastically different individual: a woman who is able to shop for extended periods of time; who is able to load a car with groceries; who stoops, lifts, and carries a young child, approximately two years old,[2] who is seen walking on his own, indicating to the Court that the child weighs at least twenty pounds; who is able to stand at a pool deck conversing casually with others; who while at the pool, bends down to collect towels, which she puts in a hamper and carries across the pool area; who walks with no apparent difficulty and can briefly jog rather than wait for a car to pass; who is out and about early in the day and spends a large part of the day running errands; and who can sit without back support for twenty minutes with no apparent difficulty. A woman who reports that she cannot do any type of housework is able to clean up at the pool. A woman who reports she cannot take care of herself can take care of her children. It is clear that Plaintiff has a credibility problem. Other courts have been hesitant to discredit a plaintiff's subjective complaints of pain based on inconsistencies between video surveillance and self-reported statements. *See Grosz–Salomon v. Paul Revere Life Ins. Co.,* 1999 WL 33244979, *6 (C.D.Cal. Feb.4, 1999); *Clausen v. Standard Ins., Co.,* 961 F.Supp. 1446, 1457 (D.Colo.1997). In *Grosz–Salomon,* the court concluded that activities captured on video tape did not shed light on the plain-

---

**2.** The child was born sometime in 1999 and the video was taken in the summer and fall of 2001.

tiff's ability to practice law full time, nor were the activities contradictory of her reported limitations. *Grosz–Salomon*, 1999 WL 33244979, *5–6. The plaintiff stated that she could not walk or stand without pain, and the surveillance captured her performing those activities with apparent pain. *Id.* at *5. Similarly, the *Clausen* court concluded that the few differences between the self-reported limitations and the actual limitations were negligible and thus that the self-reported statements were not inconsistent with the plaintiff's actual condition. *Clausen*, 961 F.Supp. at 1457. The Court agrees that minor inconsistencies do not justify a court discounting a plaintiff's subjective complaints. In this case, however, Plaintiff's statements are not inconsistent but completely contradictory to her actual ability. Thus, the Court has little problem discrediting Plaintiff's subjective complaints.

Plaintiff attempts to minimize the contradiction in an affidavit (Doc. No. 33, filed December 15, 2002) filed in connection with her response to Defendant's Motion for Summary Judgment. In that affidavit, Plaintiff avers that she has good days and bad days and "[n]aturally" described a bad day when Defendant asked her to fill out a form about her condition. The form, however, does not ask her to describe a bad day or even a typical day, and the questions seek information about her habits and not a specific day. For example, the form asks what type of housework do you perform, about changes in ability to care for yourself, and to describe a "daily routine." In her affidavit, she elaborates that good days are followed by at least one or more bad days. The statement is belied by the fact that the video was taken on July 27th, July 30th, October 7th, and October 9th. While not consecutive days, the second surveillance was taken within a day or two of the "good day." The affidavit does not restore Plaintiff's credibility.

Although Plaintiff's doctors opine that she is unable to work, those opinions are not based on objective medical evidence. Instead, the doctors rely on Plaintiff's subjective and unreliable claims of pain. Therefore, the administrator's decision was not wrong in denying Plaintiff's claim. As the Court has found that the claims administrator's decision was not wrong, the Court need not address the remaining steps of the heightened arbitrary and capricious standard, and Defendant's Motion for Summary Judgment is **GRANTED**.

### III. *Counterclaim*

#### A. Standard for Motion to Dismiss

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed for failure to state a cause of action "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.1991).

The Federal Rules of Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley*, 355 U.S. at 47, 78 S.Ct. 99. All that is required is "a short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2). The Federal Rules have adopted this "simplified pleading" approach because of "the liberal opportunity for discovery and other pretrial procedures ... to disclose more precisely the basis of both claim and defense ...." *Id.* at 48, 78 S.Ct. 99. The purpose of notice pleading is to reach a decision on the merits and to avoid turning pleading into "a game of skill in which one

misstep by counsel may be decisive to the outcome." *Id.*

### B. Analysis

To determine whether Defendant's counterclaim states a claim upon which relief may be granted, the Court must delve into the anachronistic distinction between legal and equitable relief. A party can only get equitable relief, and not legal relief, under ERISA. *See Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). In *Knudson,* the Court disallowed a claim for repayment of funds under a reimbursement provision of a plan governed by ERISA, concluding that the plaintiff sought legal relief. *Id.* at 207, 122 S.Ct. 708. Equitable relief, however, is available when the funds are identifiable, in the control of a defendant, and rightfully belong to the plaintiff. *Id.* at 213–14, 122 S.Ct. 708; *see also Administrative Committee of Wal–Mart v. Varco,* 338 F.3d 680, 687–88 (7th Cir.2003).

Viewing the counterclaim in a light most favorable to Defendant, the Court concludes that Defendant can prove the elements which would entitle it to equitable relief. Accordingly, Plaintiff's Motion to Dismiss is **DENIED**.

### IV. *Motion to Strike*

As Defendant's Motion for Summary Judgment as the Plaintiff's ERISA claim has been granted, Defendant's Motion to Strike Plaintiff's Request for a Jury Trial is **DENIED** as **MOOT**.

### V. Conclusion

Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Claims is **DISMISSED**. Defendant's Motion to Strike Plaintiff's Request for a Jury Trial is **DENIED** as MOOT. Finally, Plaintiff's

Motion to Dismiss Defendant's Counterclaim is **DENIED**.