Mary S. FEATHERSTON, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE
COMPANY, Defendant.

No. 3:03cv392/RV/MD.

United States District Court,
N.D. Florida,
Pensacola Division.

Aug. 30, 2004.

Robert T. Bleach, Daniel M. Soloway PA, Pensacola, FL, for Plaintiff.

James Riley Davis, Katz, Kutter, Alderman, etc., Tallahassee, FL, Ralph Colby Losey, Stephanie A. Segalini, Katz, Kutter, Alderman, etc., Orlando, FL, for Defendant.

## ORDER

VINSON, District Judge.

Pending is the plaintiff's objection to Magistrate Judge Davis' order of March 29, 2004, granting defendant's protective order. (Doc.

38). Judge Davis granted a motion for a protective order filed by the defendant, Metropolitan Life Insurance Company ("MetLife"), which prevents the plaintiff, Mary F. Featherston, from engaging in discovery. Pursuant to Rule 72(a), Federal Rules of Civil Procedure, plaintiff has filed this objection to the Magistrate's order.

## I. FACTUAL BACKGROUND

Prior to 1994, the plaintiff purchased through her employer, Bank of America, an insurance plan ("the plan") which included long term disability insurance. MetLife administered the plan for the plaintiff's employer. Additionally, the plan granted MetLife discretion to interpret plan provisions. On or before July 12, 1994, the plaintiff applied for disability benefits under the plan claiming that she was disabled due to fibromyalgia, chronic fatigue, osteoporosis, pain from traumatic fractures of the lower extremities, and asthma. MetLife granted plaintiff benefits under its plan in January of 1995, and continued paying benefits to the plaintiff for the next seven years. Then, MetLife reviewed plaintiff's subsequent medical records, and MetLife determined that plaintiff was no longer disabled as defined in the plan. As a result, MetLife terminated plaintiff's benefits in November 2002. After exhausting her administrative remedies, plaintiff filed this lawsuit pursuant to the Employee Retirement Income Security Act ("ERISA") [29 U.S.C. § 1132(a)(1)(B)] seeking reinstatement of her disability benefits.

On February 25, 2004, plaintiff noticed the depositions of two MetLife employees responsible for managing her claim benefits, and ultimately responsible for denying plaintiff's claim. Although the deposition notices do not place any limitations on the permissible scope of examination, plaintiff subsequently suggested during a telephone conversation with the defendant that she intended to limit the depositions to five areas of inquiry which she maintains are appropriate in ERISA cases. Specifically, the plaintiff proposed to limit discovery to: (1) the exact

nature of the information considered by the fiduciary in making the decision; (2) whether the fiduciary was competent to evaluate the information in the administrative record; (3) how the fiduciary reached its decision; (4) whether, given the nature of the information in the record, it was incumbent upon the fiduciary to seek outside technical assistance in reaching a "fair and full review" of the claim; and (5) whether a conflict of interest exists.[1] Thus, the plaintiff seeks to focus discovery on the procedure by which MetLife decided her claim rather than to introduce new medical evidence concerning the merits of her disability claim.

Maintaining that no discovery is permissible in an ERISA case such as this one, MetLife moved for a protective order seeking to prevent the taking of the depositions. MetLife contends that discovery is inappropriate because the court's review is confined to the facts before the administrator at the time the decision to deny benefits was made. Both parties agree that a heightened arbitrary and capricious standard of review applies to the defendant's denial of plaintiffs' claim, but the parties dispute the permissible scope of discovery under the heightened review. At this stage in the litigation, the parties have not reached the merits of the plaintiff's claim, but instead are disputing the amount of discovery permitted under ERISA.

A hearing was held before the Magistrate Judge regarding the protective order, and he granted MetLife's motion for a protective order on the basis that the information sought is not discoverable under Rule 26(b)(1), Federal Rules of Civil Procedure, because any information outside the administrative record is irrelevant to the court's review. The plaintiff objects to that order.

## II. STANDARD OF REVIEW

■ In the case of a discovery motion or other nondispositive pretrial order, the decision of the magistrate judge is a final decision. 28 U.S.C. § 636(b)(1)(A) (2004). Final decisions of a magistrate judge are subject to

1. The plaintiff relies on *Woodward v. Reliance Ins. Co.*, 2003 WL 1798519 (N.D.Fla.2003) (citing *Cerrito v. Liberty Life Assurance Co.*, 209

F.R.D. 663, 664 (M.D.Fla.2002)) for support that these factors are within the scope of permissible discovery in ERISA cases.

a "clearly erroneous or contrary to law" standard of review by the district court. *Id.* at (b)(1)(B); *In re Commissioner's Subpoenas,* 325 F.3d 1287, 1292 (11th Cir.2003). A magistrate judge's decision on discovery motions is not subject to a *de novo* determination as is a report and recommendation. *Merritt v. International Broth. of Boilermakers,* 649 F.2d 1013, 1017 (5th Cir.1981).

## III. DISCUSSION

### A. Introduction

■ Rule 26(b)(1) permits parties to a civil case to conduct discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party in the case. Like most discovery disputes, then, in this ERISA case, the scope of discovery will hinge on whether the discovery sought by the plaintiff is relevant to the "claim or defense of any party."

The standard of review in an ERISA case will dictate what facts or evidence the plaintiff must prove in order to successfully claim an entitlement to benefits under the terms of an employee benefit plan. Therefore, the applicable standard of review will also shape the permissible scope of discovery in ERISA cases. At the hearing, both parties agreed that the plan grants MetLife discretionary authority to determine eligibility benefits, and also that there is a conflict of interest because MetLife administers the plan and pays claims out of its own assets. Therefore, both parties also acknowledge that the Eleventh Circuit's heightened arbitrary and capricious standard of review applies. Significantly, however, the defendant and the plaintiff dispute how the heightened arbitrary and capricious standard of review affects judicial scrutiny of an administrator's decision to deny benefits. According to the Magistrate Judge's order: "By defendant's reasoning, it means looking at the record with a somewhat jaundiced eye. By plaintiff's reasoning, it means supplementing the record with whatever can be found that might help clarify the administrator's reasoning." (Order, p. 3)

A thorough analysis of what the "heightened" arbitrary and capricious standard of review entails is crucial in determining whether the Magistrate Judge's decision to deny discovery in this case was clearly erroneous or contrary to law.

### B. Application of the Heightened Arbitrary and Capricious Standard of Review in ERISA Cases

ERISA provides that a plan participant or beneficiary may bring a civil action in federal court to "recover benefits due to him under the terms of his plan." ERISA, § 1132(a)(1)(B). At the same time, however, ERISA does not specify the appropriate standard of review of a plan administrator or fiduciary's denial of a beneficiary's claim for benefits. Rather, case law has set out the appropriate standard of review to be applied in determining whether a plan administrator has wrongfully denied benefits to a beneficiary or plan participant. In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court of the United States offered a range of standards that may apply to benefits determinations, and indicated that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion'." *Id.* at 116, 109 S.Ct. 948 (citing Restatement (Second) of Trusts, § 187, Comment *d* (1959)). Each of the federal circuit courts has developed its own analysis of how to implement judicial review in these type of cases.

■ Following the *Firestone* decision, the Eleventh Circuit established three distinct standards for reviewing an ERISA plan administrator's decision: (1) *de novo* where the plan does not grant the administrator discretion, (2) arbitrary and capricious where the plan grants the administrator discretion, and (3) heightened arbitrary and capricious where the plan grants the administrator discretion, but a conflict of interest exists. *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.,* 240 F.3d 982, 993 (11th Cir.2001) (quoting *Buckley v. Metro. Life,* 115 F.3d 936, 939 (11th Cir.1997)); *Brown v. Blue Cross and Blue Shield,* 898 F.2d 1556, 1561 (11th Cir.1990).

■ In specifically addressing the effect a conflict of interest has on the court's review of an administrator's decision, the Eleventh Circuit noted that the trust nature of an employee benefit plan is fundamental to ERISA, and the administrator, as a fiduciary, is entitled to exercise a great deal of discretion. *Brown v. Blue Cross, supra,* 898 F.2d at 1561. However, where a conflict of interest exists, the trust aspect of an employee benefit plan is minimized. *Id.* Accordingly, where the administrator of an ERISA plan has discretionary authority to determine eligibility for benefits *and* acts under a conflict of interest, such a determination involving plan interpretations is not entitled to as much deference. *Id.* at 1561.

After reasoning that a conflict of interest entitles the administrator's decision to less deference, the Eleventh Circuit set out to develop a coherent method for integrating factors such as self-interest into a legal standard for reviewing benefit determinations. *Id.* It did not adopt the approach of simply looking at the record with a "somewhat jaundiced eye." Instead, the Eleventh circuit devised a unique step-by-step, burden-shifting method of evaluating the ERISA administrator's decision. *Id.; HCA Health Services v. Employers Health Ins. Co., supra,* 240 F.3d at 993 ("At each step of this analysis, the court makes a determination that results in either the progression to the next step or the end of the inquiry.").[2]

■ Significantly, the court's evaluation at each stage of this multi-step approach may require the court to consider different information and evidence. Therefore, for clarity,

each step will be set out in detail. Initially, the court must determine whether the plan grants the administrator discretion. *Id.* If no discretion is granted, the decision is reviewed *de novo. Id.* If the administrator is granted discretion, then at a minimum the court applies arbitrary and capricious review. *Id.* Whether the court ends up applying only pure arbitrary and capricious review or the heightened arbitrary and capricious review will depend on how far the court continues the multi-step analysis.

■ After determining that the plan grants the administrator discretion, the court first reviews the claim administrator's decision *de novo* to determine whether the decision to deny benefits was "wrong". *Id.*[3] If the court agrees with the claims administrator's decision, *i.e.* that the decision was "right," the court's inquiry ends and the administrator's decision is affirmed. However, if the court disagrees with the administrator's decision, *i.e.* that it was "wrong," then the court's second step is to decide whether reasonable grounds exist in the record to support the defendant's interpretation of the plan or decision. If reasonable grounds do not exist for the administrator's decision, then the decision is arbitrary and capricious, and the administrator's decision must be reversed. *Id.* at 994. In pre-*Brown* cases, if reasonable grounds did in fact exist in the record to support the administrator's decision, then the court simply deferred to the administrator's discretion and the denial of benefits was upheld. In other words, under the pure arbitrary and capricious standard of

---

2. Other circuits have specifically rejected the Eleventh Circuit's burden-shifting approach. *See e.g. Pinto v. Reliance,* 214 F.3d 377, 391 (3d Cir.2000); *Vega v. National Life Ins. Services, Inc.,* 188 F.3d 287, 296 (5th Cir.1999); *Armstrong v. Aetna Life Ins. Co.,* 128 F.3d 1263, 1265 (8th Cir.1997); *Chambers v. Family Health Plan Corp.,* 100 F.3d 818 (10th Cir.1996); *Doe v. Group Hospitalization & Medical Services,* 3 F.3d 80,87 (4th Cir.1993); *Miller v. Metropolitan Life Insur. Co.,* 925 F.2d 979, 984 (6th Cir.1991). Instead, these circuits have adopted a sliding-scale approach, in which the court's level of scrutiny depends on the seriousness of the conflict. Under the sliding-scale approach, the greater the evidence of conflict on the part of the administrator, the less deferential the abuse of discretion standard. However, under the slid-

ing-scale approach, the burden never shifts to the administrator to prove that its decision was not tainted by self-interest. To the extent that the defendant has cited cases from these jurisdictions in support of limiting the court's review to the administrative record, these cases are not instructive on the scope of discovery under the Eleventh Circuit's burden-shifting approach.

3. "Wrong" is the label used by the Eleventh Circuit to describe the conclusion a court reaches when, after reviewing the plan documents and the administrative record, the court disagrees with the claims administrator's decision. *HCA, supra,* 240 F.3d at 993, n. 23; *Yochum v. Barnett Banks, Inc.,* 234 F.3d 541 (11th Cir.2000).

review, the court's determination of whether the ERISA plan participant is entitled to benefits hinges solely on whether, nevertheless, the administrator's wrong decision is reasonably supported by evidence in the record.

 Following *Brown* and its progeny in the Eleventh Circuit, however, the reviewing court must now continue its inquiry after determining that the administrator's decision is wrong, but reasonable. Specifically, the court must determine whether the administrator operated under a conflict of interest. *Id.* If no conflict of interest exists, then a pure arbitrary and capricious standard of review applies, and a wrong, but reasonable, interpretation will be upheld. *Id.*[4] If a conflict of interest does exist, then the Eleventh Circuit shifts the burden to the claims administrator to prove that its interpretation of the plan is not tainted by its self-interest. *Id.* at 995. A wrong, but apparently reasonable interpretation, is arbitrary and capricious if it advances the conflicting interest of the administrator at the expense of the beneficiary. *Brown, supra,* 898 F.2d at 1566–67. Moreover, even if the claims administrator satisfies the burden of proving that its decision is not tainted by self-interest, the claimant may still be successful if the claimant can show by "other measures" that the administrator's decision was tainted by self-interest. *Id.* If defendant does not carry its burden of purging the taint of self-interest or if the plaintiff shows by other measures that the decision was infected with self-interest, then the administrator's factual determinations are not entitled to deference. Thus, a wrong, but reasonable, interpretation motivated by the administrator's self-interest must be overturned and an award of benefits made to the plaintiff.

 Significant to this case, the Eleventh Circuit's burden-shifting approach applies to an administrator's factual determina-

tions, as well as the administrator's plan interpretations. *Torres v. Pittston Company,* 346 F.3d 1324 (11th Cir.2003). Thus, since the 2003 *Torres* decision, the Eleventh Circuit law is that the language, rationale, and holding of *Brown* apply with equal force to factual determinations of claims administrators, and a heightened arbitrary and capricious standard of review should be applied to both plan interpretations and factual determinations of ERISA claims administrators when a conflict of interest exists.

### C. Appropriate Discovery Under Heightened Arbitrary and Capricious Review

Magistrate Judge Davis' reasoning for granting the protective order in this case is clear: his conclusion that "(t)he reviewing court's role is merely to determine whether there was a reasonable basis for the administrator's decision, based upon the information known to the administrator at the time the decision was made."[5] Accordingly, he concluded that evidence outside the administrative record, such as the depositions of the two claims administrators, is irrelevant to the court's review and thus not authorized by Rule 26 of the Federal Rules of Civil Procedure.

Indeed, in *Jett v. Blue Cross and Blue Shield,* 890 F.2d 1137 (11th Cir.1989), relied upon by Judge Davis, the Eleventh Circuit held that under an arbitrary and capricious standard of review, the district court's function is to determine "whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Id.* at 1139. However, *Jett* predates *Brown* and *Torres* and only partially determines the scope of issues in a case in which a conflict of interest exists. The *Jett* court was not required to continue its inquiry and apply the heightened arbitrary and capricious standard

---

4. The Eleventh Circuit explained that in "applying heightened arbitrary and capricious review, the court follows the same steps that constitute arbitrary and capricious review, but given the claims administrator's self interest, it continues the inquiry." *Id.* at 994.

5. The Magistrate Judge relied on *Levinson v. Reliance,* 245 F.3d 1321 (11th Cir.2001); *Buckley v. Metropolitan Life, supra,* 115 F.3d at 941 n. 2; *Lee v. Blue Cross/Blue Shield of Alabama,* 10 F.3d 1547, 1550 (11th Cir.1994); *Jett v. Blue Cross and Blue Shield of Alabama, Inc.,* 890 F.2d 1137, 1139 (11th Cir.1989).

of review, as the reviewing court in this case will be required to do.[6]

The Eleventh Circuit in *Jett* explained that"(a)s long as a reasonable basis appears for (the plan administrator's) decision, it must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary decision." *Id.* By comparison, under the heightened arbitrary and capricious standard of review, the Eleventh Circuit holds that when a conflict of interest is present, even if the court determines that a reasonable basis existed for the administrator's decision, the administrator's decision should not necessarily prevail. *Torres v. Pittson Company, supra,* 346 F.3d 1324; *HCA Health Servs. v. Employers Health Ins. Co., supra,* 240 F.3d at 993; *Brown v. Blue Cross, supra,* 898 F.2d at 1561. Instead, the court must continue its inquiry and gauge the self-interest of the claims administrator. In other words, the reviewing court's decision, when a conflict of interest exists, may not rest merely upon a finding that the administrator's decision was reasonable.[7] Thus, in light of *Brown* and *Torres,* the Magistrate Judge's reliance on *Jett* in determining the scope of judicial review in this case where a conflict of interest exists was misplaced.[8]

The other cases relied upon by the Magistrate Judge which limit the court's review to the administrative record only address what evidence a court may review when applying the pure arbitrary and capricious review. It is true that initially when a court determines whether the administrator's denial of the claim was correct or whether it was reasonable, the court's review is limited to the facts before the administrator at the time the decision was made. However, contrary to the Magistrate Judge's interpretation of the cited cases, these cases do not address the issue of what evidence a court may review once it must proceed to the next stage of the *Brown* analysis in which the burden shifts to the defendant.

For instance, *Levinson v. Reliance,* 245 F.3d 1321, 1325–26 (11th Cir.2001) acknowledges that a heightened arbitrary and capricious standard of review would apply due to the conflict of interest in that case, but the court in the end was not required to consider the self-interest of the administrator. Instead, the court determined that the claim administrator's decision was wrong from a perspective of *de novo* review and that there was no reasonable basis for the defendant's decision.[9] Thus, there was no need for the court to proceed to the next step and gauge of the self-interest of the administrator.[10]

---

6. *See Brown, supra,* 898 F.2d at 1562 (noting that "(t)he crucial difference in *Jett,* however, is the lack of any conflicting interest on the part of the insurance company. The plan was self-insured, with the insurance company acting as administrator and receiving full reimbursement from the plan sponsor for covered medical claims.")

7. Of course, if the reviewing court determines (based on the administrative record) that the administrator's decision was correct, then the administrator's decision will stand, and the court ends its inquiry. Nevertheless, there is a significant difference between a finding that the claim's denial was correct and a finding that it was reasonable. To determine that a claim's decision was correct, the court must examine the record *de novo* and *agree* with the claim administrator's decision. A determination that the claim administrator's decision was reasonable only requires the court to find that there is adequate support for the decision based on the facts in the record. In *Jett,* the Eleventh Circuit only required a reviewing court to determine whether a "wrong" claims denial was "reasonable." Pursuant to *Brown,* if there is a conflict of interest, a finding by the reviewing court that the denial was rea-

sonable is not sufficient by itself to support the administrator's otherwise wrong decision.

8. *Jett's* holding is still applicable to the extent that the judicial review is limited to the arbitrary and capricious standard, such as when no conflict of interest exists or when the court determines *de novo* that the administrator's decision was correct. *See Brown,* 898 F.2d at 1566 n. 12 ("It is fundamental that the fiduciary's interpretation first must be 'wrong' from the perspective of *de novo* review before a reviewing court is concerned with the self-interest of the fiduciary.")

9. *See Williams v. BellSouth Telecommunications, Inc.,* 373 F.3d 1132 (11th Cir.2004) (Discussing the *Levinson* decision and noting that in *Levinson* "there was no need to apply the 'heightened' arbitrary and capricious standard, though we somewhat clouded the discussion there by referencing the administrator's 'self-interest' in our concluding passage on that score.")

10. The Magistrate Judge also cited *Buckley v. Metropolitan Life,* 115 F.3d 936 (11th Cir.1997)

Accordingly, the *Levinson* decision, like the *Jett* decision, does not address the issue of whether a reviewing court may consider evidence outside the administrative record when it is actually necessary to gauge the self-interest of the administrator and shift the burden to the defendant to prove that its decision did not advance its own interests at the expense of the beneficiary.[11] Thus, the question of what evidence is relevant to ERISA claims of both the plaintiff and the defendant in a case like this remains undecided by the Eleventh Circuit.

Although (contrary to the Magistrate Judge's conclusion) the Eleventh Circuit has not squarely addressed this issue, it has indicated that evidence outside of the administrative record may ultimately be appropriate in considering whether a claims administrator acted in its own self-interest under the heightened arbitrary and capricious standard. *See Lee v. Blue Cross*, 10 F.3d 1547 (11th Cir.1994). In *Lee v. Blue Cross*, the Eleventh Circuit first acknowledged that it could only look to facts before the administrator at the time the decision was made to determine whether the administrator's decision was "wrong." *Id.* at 1550. However, after determining from the administrative record that the decision to deny benefits was wrong, but reasonable, the court shifted the burden to the conflicted insurance company to prove that its interpretation of the plan was not tainted by self-interest. Recognizing that the district court only applied an arbitrary and capricious standard, the court remanded the case and directed the district court to apply the "second prong" of the *Brown* analysis. *Id.* Specifically, the Eleventh Circuit directed the district court on remand to "consider evidence presented by (the plaintiff) to rebut (the defendant's) claims of lack of a profit motive or self-interest *and* by (the defendant) to demonstrate that its claims decision maximized benefits to participants and beneficiaries." *Id.* Since the district court had already reviewed the administrative record to determine that the administrator's decision was wrong, it follows that the Eleventh Circuit recognized the need for additional evidence in evaluating the defendant's self-interest. Because evidence regarding these claims of both the plaintiff and the defendant would not ordinarily be expected to be within the administrative record, the only reasonable inference is that it encompasses evidence outside the administrative record.

 It is also important to note that Eleventh Circuit decisions hold that under the heightened arbitrary and capricious review, even if the defendant satisfies its burden and establishes that its decision was not tainted by self-interest, an ERISA claimant may still be successful if he or she can show "by other measures that the administrator's decision was arbitrary and capricious." *HCA Health Servs. v. Employers Health Ins. Co.*, *supra*, 240 F.3d at 995; *Lee v. Blue Cross*, *supra*, 10 F.3d at 1552; *Brown v. Blue Cross and Blue Shield*, *supra*, 898 F.2d at 1568.[12]

---

as limiting the court's review under the heightened arbitrary and capricious standard to the administrative record. However, *Buckley* held that no conflict of interest existed and thus the heightened arbitrary and capricious standard was inappropriate to the facts of that case.

11. The defendant also cites several district court cases from other district courts within the Eleventh Circuit for the proposition that even under the heightened arbitrary and capricious standard, the court's review is confined to the administrative record. However, in all of these cases, the court's inquiry never proceeded to the burden-shifting step of heightened arbitrary and capricious standard of review. *See e.g. Johnson v. New York Life Insurance Co.*, 2001 WL 1736879, at *5 (M.D.Fla.2001)("As the Defendants' decision was not wrong from the perspective of *de novo* review, it is not necessary to consider the self-interest of the Defendants."); *Schindler v.*

*Metropolitan Life Insurance Co.*, 141 F.Supp.2d 1073, 1081 (M.D.Fla.2001)(After determining that the claims administrator's decision was correct, holding that "it is unnecessary to reach the question of whether (defendant) suffers from a conflict of interest, or what role any conflict might have played in the plan administrator's decision to deny benefits."); *Carnaghi v. Phoenix American Life Insurance Co.*, 238 F.Supp.2d 1373, 1375–76(N.D.Ga.2002)(holding——pre-*Torres*——that heightened arbitrary and capricious standard does not apply to an administrator's factual determinations); *Parness v. Metropolitan Life Insurance Co.*, 291 F.Supp.2d 1347, (S.D.Fla.2003)(holding that the administrator's decision was correct because it was reasonable, without shifting the burden to the administrator).

12. *See e.g., Barchus v. Hartford Life and Accident Insur. Co.*, 320 F.Supp.2d 1266, 1290 n. 132 (M.D.Fla.2004)(noting that "the plaintiff has not

Although no Eleventh Circuit case expressly defines or suggests what "other measures" the claimant may use, it seems that the term must include evidence outside of the administrative record. Otherwise, it would be illogical for the court to look at the administrative record to determine whether the defendant has carried its burden, and then look at the same administrative record to determine whether the plaintiff showed by "other measures" that the decision was not tainted by self-interest. Use of the term "other" indicates that the plaintiff may use supplemental evidence outside the administrative record for the limited purpose of demonstrating that the defendant's self-interest motivated the decision.

In this case, it is likely that the court may have to evaluate MetLife's self-interest,[13] and proceed to the burden-shifting step of the heightened arbitrary and capricious review.

### D. Burden of Proof Under Heightened Arbitrary and Capricious Standard

■ Furthermore, in contrast to *Brown's* burden-shifting approach, the Magistrate Judge's order apparently places the burden on the plaintiff to establish that the administrator's decision was actually affected by the defendant's own self-interest before discovery will be permitted. For instance, the order states that "to the extent that plaintiff seeks to delve beyond (the administrative record), she has not shown a reason for doing so. Generally, a palpable conflict of interest or serious procedural irregularity will be apparent on the face of the administrative record." (Order, p. 6)

Requiring the plaintiff to provide specific evidence that the conflict actually infected the decision before shifting the burden to the defendant to prove otherwise is contrary to the law of the Eleventh Circuit. In this case, the record establishes that a "palpable" conflict of interest exists. In *Brown*, the Eleventh Circuit held that a "strong conflict of interest *exists* when the fiduciary making a discretionary decision is also the insurance company responsible for paying the claims." *Id.* at 1568. (emphasis added). *See also, Levinson v. Reliance Standard Ins. Co.*, 245 F.3d 1321, 1325–26 (11th Cir.2001) (holding that when an administrator of a benefit plan governed by ERISA pays participants out of its own assets, a conflict of interest exists between its fiduciary role and its profit-making role, and a heightened arbitrary and capricious standard applies in reviewing administrator's discretionary denial of benefits under the plan.) Thus, once it is established that the claims administrator acts under such a conflict of interest, the *Brown* multi-step approach compels the reviewing court to shift the burden to the defendant to prove that a wrong, but reasonable, decision was not tainted by self-interest. At that stage of the analysis, any rule which requires the plaintiff to prove that the defendant's self-interest was in fact a motivating factor in the decision is contrary to the law of the Eleventh Circuit.

■ Moreover, the Magistrate Judge's order apparently requires the plaintiff to show fraud or bad faith on the part of MetLife before discovery will be permitted.[14] The Eleventh Circuit, however, does not require a showing of intentional misconduct in order to shift the burden of proof to the defendant to prove that its decision is not tainted by self-interest.[15] For example, in

presented evidence to support the conclusion that the Defendant's decision was arbitrary and capricious 'by other measures'.") If "other measures" really is as broad a term as it literally means, the heightened arbitrary and capricious standard adopted in the Eleventh Circuit is equivalent to a broad, beyond the administrative record, *de novo* review. I do not believe that is the Eleventh Circuit's intended standard.

13. The parties have stipulated to the conflict of interest in this case.

14. For instance, the order states that: "Discovery may ultimately be appropriate in a case

where there is a showing that the administrator of a plan is likely carrying out a fraud on the insured employees and the employer who is paying the premiums for the supposed coverage, but this is not that case." (Order, p. 6) Or, later the order states [at p. 7] that "the administrative record cannot be plausibly read as disclosing the kind of fraud plaintiff would need to show the court in order to justify discovery in this case."

15. "[T]he beneficiary need only show that the fiduciary allowed himself to be placed in a position where his personal interest *might* conflict with the interest of the beneficiary." *Brown*, 898 F.2d at 1565 (11th Cir.1990).

*Shaw v. Connecticut General Life Ins. Co.,* 353 F.3d 1276 (11th Cir.2003), the defendant argued that absent any evidence of bad faith, the court should review a claims administrator's factual determinations under the pure arbitrary and capricious standard. The Eleventh Circuit rejected this argument and noted that the conflict of interest is inherent in the situation, thereby requiring a heightened arbitrary and capricious standard (i.e., the burden-shifting approach).

This automatic burden-shifting framework underscores the Eleventh Circuit's caution that "a conflicted fiduciary may, *consciously or unconsciously,* favor its interests over the interests of the plan beneficiaries ..." and "(i)mproper motives encompasses something different from dishonesty or bad faith" *Brown, supra,* 898 F.2d at 1566. (emphasis added).[16] Thus, even a principled fiduciary may unconsciously make decisions that are not solely in the best interest of the beneficiary. In fact, the *Brown* court reasoned that "(t)he judicial hesitation to inquire into the fiduciary's motives will leave the beneficiaries unprotected unless the existence of a substantial conflicting interest shifts the burden to the fiduciary to demonstrate that its decision is not infected with self-interest." *Id.* at 1565. When the record demonstrates a conflict of interest, evidence outside the administrative record may ultimately be relevant in gauging the defendant's self-interest. If that is the case, it is contrary to law to require the plaintiff to prove fraud or bad faith on the part of the defendant before allowing the plaintiff to conduct discovery.

**E. Relevant Information Pertaining to an ERISA Administrator's Factual Determinations**

 Since a conflict of interest does in fact exist in this case, evidence outside the administrative record may ultimately become relevant to the judicial review of plaintiff's ERISA claim. Nevertheless, the scope of discovery relevant to the court's inquiry, should it reach the second stage of the *Brown* analysis, must be limited to the conflict of interest issues. The existence of a conflict of interest does not necessarily permit the plaintiff to conduct broad discovery. Instead, any allowed discovery must focus on evidence that is relevant to the self-interest issues in the decisionmaking process.[17]

 The Eleventh Circuit has not specifically addressed what evidence may indicate that the administrator's factual determination was motivated by self-interest.[18] Accordingly, a reviewing court must "contextually tailor" the burden-shifting analysis to suitably fit the factual determination process in ERISA disability claims. *Brown v. Blue Cross, supra,* 898 F.2d at 1556. Thus, in determining whether the administrator abused its discretion by advancing its own self-interest, a court might consider such evidence as whether the administrator can demonstrate the existence of a routine practice by which it reviews claims, and that it followed that routine practice in the present case. *See Williams v. BellSouth,* 373 F.3d 1132, 1139 (11th Cir.2004). Even a conflicted administrator should receive deference when he demonstrates that he is exercising discre-

**16.** *See e.g., Stvartak v. Eastman Kodak Co.,* 945 F.Supp. 1532, 1544 (M.D.Fla.1996)(A conflict of interest "implies no misfeasance by the plan administrator. Rather, the conflict is inherent where ... (t)he Plan Administrator necessarily has mixed motives in exercising his power to interpret the plans.").

**17.** I set aside any discussion of what discovery may be relevant to the "other measures" discussed *supra.* It would appear that the "other measures" are triggered only when a conflict exists, and must have some relationship to the conflict of interest issues.

**18.** A defendant may satisfy the burden of removing the taint of self-interest by proving that its plan interpretation has the effect of benefitting the class of participants and beneficiaries. Al-

though such evidence may be highly relevant when a court evaluates an administrator's plan interpretation, it has less applicability when the court reviews an administrator's factual determinations specific to an individual claimant. In such a case, the effect of the administrator's factual finding does not necessarily reach the class of beneficiaries as it does in the plan interpretation context. *See e.g. Barchus v. Hartford Life and Accident Insurance Co.,* 320 F.Supp.2d 1266, 1289 (M.D.Fla.2004)("In a heavily fact-laden inquiry such as this, as opposed to a pure plan interpretation, the adverse effect of a claims administrator's decision on the class of beneficiaries and participants is circumscribed by the facts of the claim before the administrator.")

tion among choices which reasonably may be considered to be in the overall best interests of the plan participants and beneficiaries. *Brown, supra,* 898 F.2d at 1568.

■ Relying on several district court cases,[19] the plaintiff proposes to limit its examination in the depositions of the two Met-Life administrators to: (1) the exact nature of the information considered by the fiduciary in making the decision; (2) whether the fiduciary was competent to evaluate the information in the administrative record; (3) how the fiduciary reached its decision; and (4) whether, given the nature of the information in the record, it was incumbent upon the fiduciary to seek outside technical assistance in reaching a "fair and full review" of the claim. Of course, these cases are not controlling, but may be helpful in the analysis. *McGinley v. Houston,* 361 F.3d 1328 (11th Cir.2004). However, I do not agree with these district court decisions to the extent that they allow discovery in all ERISA cases, including those involving only the pure arbitrary and capricious standard of review and where no conflict of interest exists. Therefore, whether the specific areas of inquiry set forth in *Cerrito v. Liberty Life Assurance,* 209 F.R.D. 663 (M.D.Fla.2002) are appropriate must be examined under the framework of *Brown* and its progeny. More specifically, these areas would only constitute permissible discovery to the extent that each factor is relevant in determining whether the administrator's decision was infected with its own self-interest.

The exact nature of information considered by the fiduciary may be relevant if it indicates that the fiduciary ignored pertinent evidence, which suggests that the decision was motivated by self-interest. Additionally, the competency of the claims administrator may be relevant. Evidence that the claims administrators were not qualified to evaluate medical evidence would indicate that the insurance company was not concerned with making its determination objectively. How the fiduciary reached its decision is similar to

the inquiry of whether a routine practice or procedure was either followed or disregarded in this particular case. Likewise, a determination of whether it was incumbent upon the fiduciary to seek outside technical assistance in reaching a full and fair review of the claim in this particular case is relevant to the issues of whether a routine process was followed, or whether a good faith effort was made to reach an objective decision. Thus, the plaintiff's proposed scope appears to be reasonable and appropriate for this case.

It is important to keep in mind that allowing the plaintiff to conduct limited discovery concerning the defendant's self-interest does not convert this case into one requiring complete *de novo* review. *De novo* review allows the court to substitute its own judgment for the judgment of the administrator, and although the term is not always used consistently, *de novo* review in ERISA cases usually is confined to the administrative record. By contrast, when a court considers outside-the-record evidence relevant to the administrator's self-interest, the court is only concerned with whether self-interest motivated the administrator's ultimate decision. Accordingly, the court must scrutinize whether the process by which the administrator arrived at its decision was fair and neutral (i.e., not tainted by its self-interest). If the court finds that the evidence supports the conclusion that the decision was not tainted by self-interest, the fact that the court may disagree with the administrator's decision should be irrelevant as long as the decision itself is reasonable and supported by the evidence contained in the administrative record.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's objection to the Magistrate Judge's order granting protective order (doc. 38) is SUSTAINED and the order of March 29, 2004, is REVERSED and set aside to the extent discussed herein. Accordingly, the defendant's motion for a protective order (doc. 20) is DENIED. Plaintiff shall be permitted to

---

19. *Holman v. Unum Life Ins. Co. Of America,* Case No.3:03cv175–RVWCS (N.D.Fla.2004); *Lake v. Hartford Life,* 218 F.R.D. 260, 261 (M.D.Fla.2003); *Woodward v. Reliance Ins. Co.,* 2003 WL 1798519 (N.D.Fla.2003) (citing *Cerrito v. Liberty Life Assurance Co.,* 209 F.R.D. 663, 664 (M.D.Fla.2002)).

undertake discovery limited to evidence relevant to the plaintiff's claim that the defendant's decision to deny benefits was affected by the defendant's self-interest.