Jeanette **MILLER,** Plaintiff,

v.

**BANK OF AMERICA CORPORATION, Bank of America Long Term Disability Benefits Plan, Bank of America Group Benefits Program, Bank of America Pension Plan, Bank of America 401(k) Plan, Bank of America**

---

litigation, the validity of the Release has been the principal issue.

Group Life Insurance Program, Bank of America Corporation Corporate Benefits Committee, the Bank of America Employee Stock Option Plan, Metropolitan Life Insurance Company, Defendants.

No. CIV.A. 104CV2227CC.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 7, 2005.

Paulette R. Adams–Bradham, Roswell, GA, for Plaintiff.

Aaron Edward Pohlmann, Elizabeth Johnson Bondurant, Carter & Ansley, Atlanta, GA, for Defendants.

## ORDER

COOPER, District Judge.

In this action arising under the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*, Plaintiff Jeanette Miller ("Plaintiff"), a former employee of Defendant Bank of America Corporation ("Bank of America"), seeks recovery of long-term disability benefits under a plan issued to Bank of America by Defendant Metropolitan Life Insurance Company ("MetLife"). Plaintiff alleges that she is entitled to these benefits pursuant to the terms of the Bank of America Group Benefits Program (the "Plan"). This matter is presently before the Court on Plaintiff's Motion for Extension of Time to Complete Discovery [Doc. No. 32], Defendant Metropolitan Life Insurance Company's Motion for Protective Order [Doc. No. 36], Plaintiff's Motion to Compel Defendant Metropolitan Life Insurance Company to Produce and Propound Discovery [Doc. No. 44], Plaintiff's request to file Supplemental Statement to Plaintiff's Motion to Compel Defendant MetLife to Produce and Propound Discovery [Doc. No. 48], and Plaintiff's Motion for Leave to Supplement Plaintiff's Brief in Reply to MetLife's Brief in Opposition to Plaintiff [sic] Motion to Compel Discovery and Motion for Leave to Supplement Plaintiff's Motion to Extend Discovery [Doc. No. 52].[1]

## I. APPLICABLE STANDARD OF REVIEW

To resolve the central issue underlying the pending motions, the appropriate scope of discovery, the Court first addresses the standard of review applicable in this ERISA action. Plaintiff argues that the *de novo* standard of review is appropriate because the Plan does not expressly grant MetLife discretion to determine eligibility for benefits. MetLife argues, on the other hand, that the heightened arbitrary and capricious standard of review is appropriate because MetLife is granted such discretion, notwithstanding the existence of a conflict of interest.

■ ERISA does not set forth a standard of review for challenges to decisions of plan administrators. However, the standard has evolved as a matter of federal common law. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In

1. For good cause shown, the Court **GRANTS** Plaintiff's request to file Supplemental Statement to Plaintiff's Motion to Compel Defendant MetLife to Produce and Propound Discovery [Doc. No. 48] and Plaintiff's Motion for Leave to Supplement Plaintiff's Brief in Reply to MetLife's Brief in Opposition to Plaintiff [sic] Motion to Compel Discovery and Motion for Leave to Supplement Plaintiff's Motion to Extend Discovery [Doc. No. 52].

*Firestone,* the United States Supreme Court held that a *de novo* standard applies "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. 948. Following *Firestone,* the Eleventh Circuit adopted three standards for reviewing a plan administrator's decision: (1) *de novo* where the plan does not grant the administrator or fiduciary discretion; (2) arbitrary and capricious where the plan gives the administrator or fiduciary discretion; and (3) heightened arbitrary and capricious where the plan gives the administrator or fiduciary discretion but there is a conflict of interest. *Buckley v. Metropolitan Life,* 115 F.3d 936, 939 (11th Cir.1997) (per curiam). The court looks "to the plan documents to determine whether the plan documents grant the claims administrator discretion to interpret disputed terms." *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.,* 240 F.3d 982, 993 (11th Cir.2001).

As contemplated by ERISA, several documents govern the operation and administration of the Plan at issue. *See, e.g.,* 29 U.S.C. § 1024(b)(4) (identifying the following as plan documents: "summary plan description, . . . annual report, . . . terminal report, the bargaining agreement, trust agreement, contract or other instruments under which the plan is established or operated"). First, the Bank of America Group Benefits Program effective December 31, 1999, is relevant to the operation and administration of the Plan. Second, the "Bank of America Corporation Corporate Benefits Committee Written Consent to Action" and the "Officer's Certificate of Corporate Personnel Executive Regarding Bank of America Benefit Plans Claim and Review Procedure" govern the operation and administration of the Plan. Third, the Bank of America Associate Handbook 2002, otherwise referred to as the summary plan description (the "SPD"), summarizes the terms of the Plan.[2] Fourth, a Certificate of Insurance (the "Certificate") issued to Bank of America by MetLife also contains a description of the benefits provided under the policy. Fifth and finally, a document entitled "Your Employee Benefit Plan," which incorporates the Certificate of Insurance, describes the benefits available to Plan participants. All of these documents must be considered by the Court in determining whether MetLife has been granted discretion to determine eligibility for benefits and to interpret Plan documents. *Shaw v. Connecticut Gen. Life Ins. Co.,* 353 F.3d 1276, 1282 (11th Cir.2003), (a "court is required to examine 'all of the plan documents' " (citation omitted)); *Cagle v. Bruner,* 112 F.3d 1510, 1517 (11th Cir.1997) (per curiam) ("we look to all of the plan documents to determine whether the plan affords the Fund enough discretion to make the arbitrariness standard applicable").

The Court first finds that the Bank of America Group Benefits Program effective December 31, 1999, expressly gives the Bank of America Corporation Corporate Benefits Committee (the "Committee") responsibility to act as the plan administrator.[3] (*See* Pl.'s Br. in Opposition to Def.

---

**2.** In addition to summarizing the terms of the Plan insured by MetLife, the SPD also summarizes other Bank of America employee benefits plans and employment policies.

**3.** Plaintiff asserts that Defendants did not disclose the existence of the Bank of America Group Benefits Program document in their Rule 26 Initial Disclosures. As this document seems to be relevant to this case, the Court finds it troubling that such a disclosure was not made. However, to the extent that MetLife did not utilize this document in making its benefits determination, the Court makes no decision at this stage of the litigation as to whether that was an abuse of MetLife's discretion.

Metropolitan Life Insurance Company's Mot. for Protective Order, Ex. A, Bank of America Group Benefits Program §§ 2.2 and 5.2.) Section 5.3 of that document further provides:

> The Committee shall have discretionary authority to determine eligibility for and to construe the terms of the Group Benefits Program. The Committee shall have such other discretionary authority as may be necessary to enable it to discharge its responsibilities under the Group Benefits Program, including, but not limited to, the power to resolve disputes concerning eligibility and participation ... including the ability to make factual determinations ... delegate responsibility for the operation and administration of the Group Benefits Program, including the authority to review claims, appoint or employ one or more persons to assist in the administration of the Group Benefits Program, or to render advice with regard to any of its responsibilities .... The decision of the Committee upon any matter within its authority shall be final and binding on all parties, including the Company, the Participating Employers and Associates and Former Associates and their beneficiaries and dependants.

(*Id.* at § 5.3.) MetLife has submitted to the Court the "Bank of America Corporation Corporate Benefits Committee Written Consent to Action" and the "Officer's Certificate of Corporate Personnel Executive Regarding Bank of America Benefit Plans Claim and Review Procedure," both of which indicate that the Committee has acted pursuant to its discretion provided under the Bank of America Group Benefits Program document to grant MetLife discretion to determine eligibility for benefits and interpret the provisions of the Plan. (*See* Reply Br. in Supp. of Def.'s Metropolitan Life Insurance Company's Mot. for Protective Order, Exs. 2 and 3.) The "Bank of America Corporation Corporate

Benefits Committee Written Consent to Action" states, in pertinent part, the following:

> The undersigned, being all of the members of the Bank of America Corporation Corporate Benefits Committee (the 'Committee'), do hereby unanimously take the following actions by signing our written consent hereto: ...
>
> > [T]his Committee hereby delegates to the Corporation's Corporate Personnel Executive full and complete responsibility, authority and discretion to oversee the administration of the claims procedures under the Benefit Plans, including without limitation the authority on behalf of the Committee to (i) designate any individuals or committees of individuals who may consider and decide any claims for benefits under the Benefit Plans, (ii) designate any individuals or committees of individuals who may consider and decide any appeals of such claims that have been denied, and (iii) delegate to such individuals or committees of individuals all powers necessary to enable them to carry out their duties in considering and deciding such claims, including the power to construe and interpret the applicable Benefit Plans and to determine all questions that arise thereunder ....

(Reply Br. in Supp. of Def. Metropolitan Life Insurance Company's Mot. for Protective Order, Ex. 2, p. 1.) The "Officer's Certificate of Corporate Personnel Executive Regarding Bank of America Benefit Plans Claims and Review Procedure" then provides, in pertinent part, the following:

> Pursuant to the delegation of authority [from the Bank of America Corporation Corporate Benefits Committee] described in paragraph 1, the undersigned hereby designates the persons listed on Exhibit A to consider and decide initial claims for benefits under the Benefit Plans ....

EXHIBIT A

DESIGNATION OF PARTIES RE-SPONSIBLE FOR DETERMINING INITIAL CLAIMS AND APPEALS

**Insured Plans ...**

- Long-term disability insurance ...
 *Initial Claim for benefits:* the insurance company or health or dental maintenance organization insuring the benefit *Appeal from adverse decision:* the insurance company or health or dental maintenance organization insuring the benefit.

(Reply Br. in Supp. of Def. Metropolitan Life Insurance Company's Mot. for Protective Order, Ex. 3, pp. 1, 3–4.) Both of these documents support the conclusion that MetLife has discretionary authority to interpret the terms of the Plan and to determine eligibility for benefits.

The Court also finds that the plain language of the SPD and the language included in the "Your Employee Benefit Plan" document clearly grant MetLife discretion to determine eligibility for benefits as contemplated by *Firestone.* Under the heading "[d]isability determination," the SPD provides that "[t]he existence of a disability is determined by the insurance company based on medical evidence acceptable to it." (Def. Metropolitan Life Insurance Company's Mot. for Protective Order, Ex. C, p. 83.) The SPD further states, "To receive long-term disability benefits you must first file a claim with the insurance company, which makes the final decision on all claims." (*Id.* at 84.) Also supporting the conclusion that MetLife was given the discretion to determine eligibility for benefits is the following language appearing in the "Your Employee Benefit Plan" document under the heading "Discretionary Authority of Plan Administrator and Other Plan Fiduciaries": "In carrying out their respective responsibilities under the Plan, the Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." (Def. Metropolitan Life Insurance Company's Mot. for Protective Order, Ex. D, MET CL 0487.) Plaintiff alleges in her Complaint that "MetLife is and was a claims fiduciary for the LTD Plan during the administration of Ms. Miller's LTD claim and is a fiduciary within the meaning of 29 U.S.C. § 1002(21)." (Compl. ¶ 9; *see also Id.* at ¶ 60.) Therefore, Plaintiff will not now be heard to argue that MetLife is not a Plan fiduciary.[4] Contrary to Plaintiff's argument that a *de novo* standard of review applies in this case, the Court finds that MetLife was granted discretion to determine eligibility for benefits and that, as a consequence, a more deferential standard of review applies.

 As to whether this Court should apply the arbitrary and capricious stan-

---

4. The Court additionally notes that although MetLife is not specifically named in the Bank of America Group Benefits Program document or the SPD as the designated fiduciary, an entity is deemed to be a fiduciary "with respect to a plan to the extent (i)[it] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ...." *Anderson v. Ciba–Geigy Corp.,* 759 F.2d 1518, 1522 (11th Cir.1985) (quoting 29 U.S.C. § 1002(21)(A)); *see also Stanton v. Shearson Lehman/American Express, Inc.,* 631 F.Supp. 100, 102 (N.D.Ga.1986) ("there are three ways to acquire [ERISA plan] fiduciary status—by being named in a plan as a fiduciary, by being named as a fiduciary pursuant to the procedures specified in a plan, or by performing 'fiduciary' functions") (citing 29 U.S.C. §§ 1002(21)(A) and 1102(a)(1)). MetLife clearly is a Plan fiduciary based on this authority.

dard of review or the heightened arbitrary and capricious standard of review, MetLife readily concedes that it is and was operating under a conflict of interest insofar as MetLife both determines eligibility for benefits and insures the benefits under the Plan. (*See* Br. in Supp. of Def. Metropolitan Life Insurance Company's Mot. for Protective Order at 13.) Therefore, the Court finds that the applicable standard in this case is the heightened arbitrary and capricious standard of review, and MetLife's conflict of interest must be weighed as a "facto[r] in determining whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 115, 109 S.Ct. 948 (quoting *Restatement (Second) of Trusts* § 187, Comment *d* (1959)).

## II. PERMISSIBLE SCOPE OF DISCOVERY

Having determined that the heightened arbitrary and capricious standard of review is applicable in this case, the Court now addresses the scope of discovery permitted in cases where this standard applies. MetLife argues that discovery should be limited to its production of the administrative record for Plaintiff's claim and the Plan documents, which it contends have already been produced. To the contrary, Plaintiff contends that she is entitled to take the depositions of MetLife claims personnel and that she is entitled to supplemental responses to her written discovery.

The Eleventh Circuit has provided little guidance regarding the proper scope of discovery in cases applying the heightened arbitrary and capricious standard of review. Relying on the Eleventh Circuit's decisions in *Buckley v. Metropolitan Life*, 115 F.3d 936 (11th Cir.1997), *Lee v. Blue Cross/Blue Shield*, 10 F.3d 1547 (11th Cir. 1994), and *Jett v. Blue Cross & Blue Shield, Inc.*, 890 F.2d 1137 (11th Cir.1989), MetLife argues that the Court should not consider any facts or evidence not con-

tained within the administrative record and the Plan documents. However, in *Buckley, Lee*, and *Jett*, which each provided that, in reviewing a decision terminating benefits, courts should rely only on the facts known to the administrator at the time of the decision, the Eleventh Circuit made that statement in the context of applying the arbitrary and capricious standard of review, not the heightened arbitrary and capricious standard of review. *See Buckley*, 115 F.3d at 941; *Lee*, 10 F.3d at 1550; *Jett*, 890 F.2d at 1139.

MetLife attaches to its brief an order entered in an unpublished district court case, *Williams v. Hartford Life and Accident Insur. Co.*, Civil Action No. CV403–123 (S.D.Ga. Jan. 24, 2004), granting a motion for a protective order on the basis that, in reviewing the denial of benefits, the court should only look to the facts known to the administrator at the time of the benefits determination. However, the court in *Williams* also applied the arbitrary and capricious standard of review, not the heightened arbitrary and capricious standard of review. In the second unpublished case attached to MetLife's brief, *Franco v. Mutual of Omaha Ins. Co.*, Civil Action No. 1:00–CV–1162A–JEC, the court entered an order granting a motion for protective order, but the order does not specify the standard of review applicable in the case. Significantly, however, in granting the protective order motion, the court found that a deposition noticed for the purpose of determining the thought and review processes that underlaid the denial of benefits was not warranted where the case did not present any unusual circumstances. This case, on the other hand, presents a situation where the insurer of benefits also determines eligibility for benefits, making the thought and review processes of MetLife potentially relevant. Therefore, the Court believes that the instant case is distinguishable from both *Williams* and *Franco*.

 Pursuant to the Eleventh Circuit's decision in *Brown v. Blue Cross & Blue Shield, Inc.*, 898 F.2d 1556 (11th Cir.1990), even if the Court determines that an administrator or fiduciary's benefits decision is reasonable, the administrator or fiduciary must prove that its interpretation of the plan provisions was not tainted by self-interest. *Id.* at 1566; *see also Torres v. Pittston Co.*, 346 F.3d 1324 (11th Cir.2003). Given the analysis required by *Brown*, the Court rejects MetLife's arguments and parts with those district court decisions holding or suggesting that no documents or evidence outside of the administrative record and plan documents should be considered when applying the heightened arbitrary and capricious standard of review.[5] Adopting and consistent with the reasoning articulated in *Featherston v. Metropolitan Life Ins. Co.*, 223 F.R.D. 647 (N.D.Fla.2004),[6] the Court concludes that Plaintiff is entitled to conduct discovery to obtain information that might enable her to refute any evidence that MetLife would offer to show that its interpretation of the plan provisions was not tainted by self-interest.

In allowing Plaintiff to pursue discovery beyond the production of the administrative record and Plan documents, however, the discovery still must be narrowly tailored such that it is limited to seeking information concerning the self-interest issues. *Id.* at 657 ("the scope of discovery relevant to the court's inquiry, should it reach the second stage of the *Brown* analysis, must be limited to the conflict of interest issues"). As in the *Featherston* decision and for the reasons stated therein, the Court will permit Plaintiff to discover information pertaining to the following specific topics:

---

5. For examples of district court decisions in which this position was taken, see *Carnaghi v. Phoenix Am. Life Ins. Co.*, 238 F.Supp.2d 1373, 1377 (N.D.Ga.2002), where the court applied the heightened arbitrary and capricious standard of review and based its review of the administrator's decision only on those materials available to the administrator at the time the final appeal decision was rendered and *Serauskus v. Sun Life Assur. of Canada*, 205 F.Supp.2d 1369, 1372, 1373 (N.D.Ga. 2001), where the court determined that the heightened arbitrary and capricious standard of review applied but refused to consider the affidavit of the plaintiff because the affidavit had not been presented to the administrator at the time of the decision in dispute.

6. In *Featherston*, the court held that an ERISA claimant could use evidence outside of the administrative record to show that the plan administrator was motivated by its self-interest in terminating the claimant's benefits. Acknowledging that the Eleventh Circuit had not squarely addressed the proper scope of discovery when the heightened arbitrary and capricious standard of review applies, the *Featherston* court nevertheless observed that in the Eleventh Circuit's *Lee* decision, the Eleventh Circuit reversed and remanded the decision of a district court that had improperly only applied an arbitrary and capricious standard of review. *Featherston*, 223 F.R.D. at 655 (citing *Lee*, 10 F.3d at 1552). The *Featherston* court noted the Eleventh Circuit's instructions in *Lee* that the district court should apply the "second prong" of the *Brown* analysis and that the district court specifically should "consider evidence presented by [the plaintiff] to rebut [the defendant's] claims of lack of a profit motive or self-interest and by [the defendant] to demonstrate that its claims decision maximized benefits to participants and beneficiaries." *Featherston*, 223 F.R.D. at 655 (quoting *Lee*, 10 F.3d at 1552). Based on *Lee*, where the district court had already reviewed the administrative record, the *Featherston* court drew the inference that additional evidence outside of the administrative record may be relevant in analyzing the self-interest of the administrator or fiduciary and the impact of that self-interest on the claims decision. *Featherston*, 223 F.R.D. at 655. The Court agrees with the inference drawn by the *Featherston* court and also agrees with the other reasons leading the *Featherston* court to permit the ERISA claimant to seek evidence outside of the administrative record.

(1) the exact nature of the information considered by the fiduciary in making the decision; (2) whether the fiduciary was competent to evaluate the information in the administrative record; (3) how the fiduciary reached its decision; and (4) whether, given the nature of the information in the record, it was incumbent upon the fiduciary to seek outside technical assistance in reaching a "fair and full review" of the claim.

*Id.* at 658. The Court will allow Plaintiff to inquire into MetLife's routine practice for deciding claims and seek to determine whether MetLife adhered to that routine practice in this case, but the Court will not permit Plaintiff to delve into the particulars of claims submitted by other individuals. As to discovery relating to Plaintiff's second cause of action for breach of fiduciary duty, MetLife has persuasively argued and Plaintiff has not refuted that discovery on this topic is not warranted because the claim is without merit since Plaintiff has not alleged that there has been harm to the Plan as a whole and the claim is not authorized by section 1132(a)(2). *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (holding that actions arising under section 1109 must be "brought in a representative capacity on behalf of the plan as a whole" in order for a plaintiff to derive relief from section 1132(a)(2)); *Matassarin v. Lynch,* 174 F.3d 549, 565 (5th Cir.1999) (section 1109 "focuses on fiduciary breaches that cause harm to a plan as a whole"); *McDonald v. Provident Indem., Life Ins. Co.,* 60 F.3d 234, 237 (5th Cir.1995) ("To estab-lish a claimed breach of fiduciary duty, an ERISA plaintiff must prove a ... loss to the plan."). Here, even in Plaintiff's brief opposing MetLife's Motion for Protective Order, Plaintiff acknowledges that she is complaining about the breach of "fiduciary duties owed to [her]." (Pl.'s Br. in Opposition to Def. Metropolitan Life Insurance Company's Mot. for Protective Order at 2.) Therefore, the Court finds that permitting Plaintiff to take discovery relevant to the second cause of action would be a futile exercise.

### III. METLIFE'S MOTION FOR PROTECTIVE ORDER

As to MetLife's Motion for Protective Order, which seeks to preclude Plaintiff from taking the depositions of six-out-of-state MetLife employees and claims personnel, the Court denies the Motion to the extent that the Court will allow the depositions to be taken. However, insofar as Plaintiff previously noticed the depositions to be taken in Atlanta, Georgia, Plaintiff is advised that, unless otherwise agreed to by the parties and the respective witnesses, Plaintiff must take the depositions in the jurisdiction(s) where the witnesses live or work. Further, as explained above, the scope of the depositions must be limited to focus on the self-interest issues, as broad discovery is not warranted in this case.

### IV. PLAINTIFF'S MOTION TO COMPEL

With respect to the interrogatories, requests for production of documents, and requests for admissions propounded by Plaintiff, the Court grants Plaintiff's motion to ·compel supplemental responses from MetLife to this written discovery.[7]

---

7. The Court agrees with MetLife that Plaintiff did not attempt to resolve *all* of the issues raised in the Motion to Compel prior to filing the Motion. While the Court reminds Plaintiff of her obligation to do so in the future, the Court finds that any attempt by Plaintiff to raise such issues regarding the discovery re-quests relating to the policy and protocols of MetLife, the conflict of interest issues, or the financial motivations of MetLife would have been futile given MetLife's steadfast position that discovery beyond the production of the administrative record and the Plan docu-

MetLife previously objected to the discovery requests on the ground, among others, that they sought to expand the permissible scope of discovery under the federal common law of ERISA. In light of the Court's ruling above that limited discovery beyond the production of the administrative record and the Plan documents is warranted where, as here, the heightened arbitrary and capricious standard applies, the Court orders MetLife to review its prior responses and objections and to provide supplemental responses to Plaintiff's discovery requests, as necessary, within fifteen (15) days of the entry of this Order. Further, to the extent that there are any documents in the administrative record for Plaintiff's claim that have not been produced to Plaintiff, the Court orders MetLife to produce such documents immediately.[8] If the parties are still unable to reach agreement with respect to MetLife's other objections to Plaintiff's discovery requests and cannot resolve the disagreement(s) after conferring in good faith, the parties may bring those disagreements to the Court's attention for resolution. However, in light of the Court's rulings herein on the primary discovery issues in dispute, the Court anticipates that the parties will be able to resolve any other discovery disputes without Court intervention.

As to Plaintiff's request for attorney's fees and costs, the Court denies the request because the Court finds that, although the Court ultimately disagreed with MetLife's position, MetLife was substantially justified in taking the position that no discovery beyond the production of the administrative record and the Plan documents was permissible. The Eleventh Circuit has not addressed the issue directly, and district courts addressing the issue have differed. Given the unsettled state of the law in this area, the Court cannot conclude that an award of attorney's fees and costs is warranted.

## V. PLAINTIFF'S MOTION TO EXTEND DISCOVERY

For good cause shown, the Court grants Plaintiff's request for an extension of the discovery period to allow the parties to conduct the discovery specified herein. The second extended discovery period shall end forty-five (45) days from the entry of the instant Order.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Plaintiff's Motion for Extension of Time to Complete Discovery [Doc. No. 32], **DENIES** Defendant Metropolitan Life Insurance Company's Motion for Protective Order [Doc. No. 36], **GRANTS** Plaintiff's Motion to Compel Defendant Metropolitan Life Insurance Company to Produce and Propound Discovery [Doc. No. 44], **GRANTS** Plaintiff's request to file Supplemental Statement to Plaintiff's Motion to Compel Defendant Metlife to Produce and Propound Discovery [Doc. No. 48], and **GRANTS** Plaintiff's Motion for Leave to Supplement Plaintiff's Brief

---

ments was not permissible. Thus, in the exercise of this Court's discretion, this Court excuses Plaintiff's failure to confer on each and every issue raised in the Motion.

8. The Court mentions the administrative record, specifically, because the Court is aware that MetLife previously failed to produce documents comprising part of the administrative record, despite several representations by MetLife that the entire administrative record had been produced. (*See* Third Affidavit of Laura Sullivan ¶¶ 5–11.) Regardless of whether MetLife's prior failure to produce the documents was inadvertent, the Court directs MetLife to review the administrative record for Plaintiff's claim again to ensure that all non-privileged documents have been produced to Plaintiff.

in Reply to MetLife's Brief in Opposition to Plaintiff [sic] Motion to Compel Discovery and Motion for Leave to Supplement Plaintiff's Motion to Extend Discovery [Doc. No. 52].